Argued April 25, affirmed June 6, reconsideration denied June 29, petition for review denied September 7, 1977

STATE OF OREGON, *Appellant,*
*v.*
ROBERT DEARREL CHIPLEY, *Respondent.*
(No. 76-5172, CA 7421)
564 P2d 1096

Tanzer, J., filed a dissenting opinion.

James C. Rhodes, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were James A. Redden, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Robert J. McCrea, Eugene, argued the cause for respondent. On the brief were Paul R. Frisch, and Morrow & McCrea, P.C., Eugene.

[ 691 ]

Before Schwab, Chief Judge, and Thornton and Tanzer, Judges.

SCHWAB, C. J.

Tanzer, J., dissenting opinion.

## SCHWAB, C. J.

The state appeals from an order suppressing evidence seized after a warrantless search of the defendant's person. ORS 138.060(3).

In September 1976 defendant was attempting to board a commercial airline flight at the Eugene airport when he triggered the alarm on a magnetometer—a device used to detect the presence of metallic objects. A private security guard employed by the airport to operate the magnetometer requested that defendant place all metallic objects in his pockets into a tray and walk through the magnetometer again. Defendant placed a number of objects into the tray and passed through the magnetometer without activating the alarm.

Gregory Zahar, a Eugene police officer stationed at the airport to provide backup assistance to the private security company, was standing near the magnetometer and observed that defendant placed into the tray an object which "appeared to be an ivory or a tusk type roach holder." Zahar had been a police officer for six years, had received training in the identification of narcotics and narcotics paraphernalia, and at one point had been assigned to the county narcotics team for about six months.

The object in question is a piece of what appears to be ivory, roughly conical in shape with a small hole in one end which expands to a diameter of approximately one-half inch at the other. Zahar moved to within two or three feet of the tray and noticed stains on the sides of the larger hole of the "roach holder" which he testified could have been caused by using it to smoke marihuana or tobacco. At this point Zahar was unable to detect any odor from the "roach holder." Zahar did not testify as to his opinion as to the primary use of "roach holders."

When defendant began placing the items in the tray back into his pockets, Zahar requested permission

to examine the "roach holder." Zahar testified that defendant consented to the examination, both verbally and through gestures; defendant testified that he did not consent. The private security guard, who was standing approximately four feet from the two, testified that he did not hear defendant consent to the examination. Zahar picked up the "roach holder" and detected the odor of marihuana. Zahar then searched defendant and found hashish and marihuana. Defendant was later indicted for illegal possession of dangerous drugs. ORS 167.207(1).

At the suppression hearing, one witness testified that objects such as that defendant placed in the tray were readily obtainable from stores and that such objects were used as decorative knickknacks, as incense holders and as good luck charms. At the conclusion of the hearing, the court found that the state had not met its burden of proving that defendant had consented to the examination of the "roach holder" and that:

> "The State has failed to prove that reasonable suspicion of criminal activity did exist on the part of the officer in his initial observation to justify his taking of the ivory 'roach holder' from the property of the defendant and conducting a nonconsensual search of the same by closely inspecting and smelling of the same."

The court held that the evidence seized from defendant should be suppressed as the fruits of the illegal search of the "roach holder."

On appeal the state has abandoned its claim that defendant orally or through gestures consented to Zahar's examination of the "roach holder," and asserts instead that defendant impliedly consented to the examination by choosing to submit to whatever security procedures were required before he could board the aircraft. Courts, squaring the necessity for airport security searches with the warrant and probable cause requirements of the Fourth Amendment, have adopted a number of approaches: some have used the implied

consent theory now urged by the state,[1] but other courts have rejected such an approach in favor of analysis grounded either in the principles of *Terry v. Ohio,* 392 US 1, 88 S Ct 1868, 20 L Ed 2d 889 (1968),[2] or the administrative-search rationale of *See v. City of Seattle,* 387 US 541, 87 S Ct 1737, 18 L Ed 2d 943 (1967), and *Camara v. Municipal Court,* 387 US 523, 87 S Ct 1727, 18 L Ed 2d 930 (1967).[3] The only consensus which has emerged from such cases is that the scope of airport security searches must be limited to seeking discovery of weapons or explosives which might be used in hijacking attempts. As was stated in *United States v. Albarado,* 495 F2d 799, 806 (2d Cir 1974):

> "* * * [T]he public does have the expectation, or at least under our Constitution the right to expect, that no matter the threat, the search to counter it will be as limited as possible, consistent with meeting the threat."

By placing the contents of his pockets into the tray, defendant cannot be said to have consented to their examination for purposes other than the prevention of hijacking attempts.

The state next asserts that as the "roach holder" was in his plain view, Zahar "did not need to request the permission of defendant to further inspect the item." Simply because the "roach holder" was in plain view, however, cannot in and of itself justify its seizure—a plain view seizure must also be based on probable cause. *State v. Elkins,* 245 Or 279, 422 P2d 250 (1966). The state contends that Zahar's familiarity with narcotics and narcotics paraphernalia coupled with his recognition of what "appeared" to him to be a "roach holder" gave rise to sufficient probable cause to

---

[1] *United States v. Davis,* 482 F2d 893 (9th Cir 1973); *United States v. Bell,* 464 F2d 667, 674 (2d Cir) (Friendly, C.J., concurring), *cert denied* 409 US 991 (1972).

[2] *United States v. Fern,* 484 F2d 666 (7th Cir 1973); *United States v. Legato,* 480 F2d 408 (1st Cir), *cert denied* 414 US 979 (1973); *United States v. Moreno,* 475 F2d 44 (5th Cir), *cert denied* 414 US 840 (1973).

[3] *See United States v. Albarado,* 495 F2d 799 (2d Cir 1974); *United States v. Skipwith,* 482 F2d 1272 (5th Cir 1973).

justify the closer examination of the "roach holder." As we noted above, we do not construe Zahar's testimony as being to the effect that the primary use of a "roach holder" was for other than legitimate purposes. In any event, even assuming that the most frequent use of a "roach holder" is for smoking marihuana, such is not the only use, and it is not contraband, per se. *See State v. Parks, State v. Tarpley, Jr.,* 5 Or App 601, 485 P2d 1246 (1971).

Affirmed.

**TANZER, J.,** dissenting.

I agree with the majority rejection of the state's theory that consent to an airport search is consent to a police search. I further agree that the legal issue is whether the officer's observations from his lawful vantage point were sufficient to constitute probable cause. Unlike the majority, however, I conclude that the officer had sufficient cause to believe it probable that defendant possessed marihuana. The officer's conclusions must be assessed in light of common experience and common sense.

If the officer had seen a cigarette holder in defendant's possession, it would have been reasonable for him to think it likely, though not certain, that defendant had cigarettes on his person. If the officer had seen a briar pipe in defendant's possession, common experience would allow him to reasonably suspect that defendant had some pipe tobacco. There is nothing different in the logic of this case except that it involves contraband. If the officer sees defendant in possession of a roach holder, then it is equally reasonable for him to suspect that defendant is in possession of marihuana.[1]

[1] Defense counsel cautions against engaging in a semantic exercise. We should assume, absent evidence to the contrary, that words are used to convey their normal meaning.

"roach—* * * the butt of a marijuana cigarette." Webster's Third New International Dictionary (1971).

In addition, the officer observed stains in the hole of the roach holder which he inferred (and defendant testified) were marihuana residue. That observation makes the officer's reasonable suspicion all the more warranted.[2]

I believe the statement of the majority that Officer "Zahar did not testify as to his opinion as to the primary use of roach holders" to be either mistaken or hypertechnical. A fair reading of the record is otherwise. He testified:

"Q  Could you describe how those particular items, particularly roach clips and roach holders, describe what those are, their purpose, and how they appear, if there's any stereotype that can be made with respect to them?

"A  Basically we're talking about two different items. A roach holder would resemble a cigarette holder of sorts. The marijuana cigarette is usually placed into a hole. And then the smoke is drawn through the holder itself. Through a mouthpiece. And taken that way."

On cross-examination he agreed with the questioner that a roach holder "could be" used to smoke tobacco cigarettes,[3] but he never testified that cigarette smoking or any other non-marihuana use was its purpose. Marihuana smoking is the only purpose for a roach holder to which he testified. The fact that a use other than its purpose is possible does not diminish its primary purpose for marihuana smoking any more than the purpose of a bent, burnt spoon as a tool for heroin ingestion is lesser because it "could be" used to eat cornflakes. This record simply does not justify the majority's conclusion that "we do not construe Zahar's testimony as being to the effect that the primary use of

[2] Our holding in *State v. Parks, State v. Tarpley, Jr.,* 5 Or App 601, 485 P2d 1246 (1971), cited by the majority is distinguishable. A hashish pipe in a vehicle used for transport less strongly implies presence of hashish in the vehicle, in my judgment, than possession of marihuana paraphernalia on one's person implies personal possession of marihuana. Also, the observation of residue, indicating use of the implement, distinguishes these facts from *Parks, Tarpley.*

[3] The diameter of the large opening of the holder is one-quarter inch, not one-half inch. It is too small to hold a standard size manufactured cigarette.

a roach holder was for other than legitimate purposes." To the contrary, the use of a roach holder for marihuana smoking is the *only* purpose to which Officer Zahar testified, and that is why he suspected defendant's possession of marihuana.

For these reasons, I believe that the officer had probable cause, based upon lawful observations, to believe that defendant was in possession of marihuana and the search was therefore valid.