Argued August 17, reversed and remanded for a new trial September 19, reconsideration denied November 2, 1977, petition for review allowed January 24, 1978

# STATE OF OREGON, *Respondent,*
## *v.*
# MICHAEL LYNN GREENE, *Appellant.*
## (No. 76-11-109, CA 8035)

568 P2d 716

Gary L. Hooper, Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

John W. Burgess, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Tanzer and Johnson, Judges.

TANZER, J.

## TANZER, J.

Defendant appeals his conviction on two counts of first degree robbery and one count of first degree burglary. We reverse and remand for a new trial.

Just before midnight on October 18, 1976, three men armed with guns entered a residence in Clackamas County, assaulted the two occupants and stole some cash, a motorcycle and some jewelry. The victims were unable to identify their assailants, but a neighbor reported seeing an automobile parked in front of the victims' home at the approximate time of the crime. The neighbor stated that she observed two men get out of the car and enter the victims' home, followed a short time later by a third man. Shortly thereafter she saw one of the men drive away on a motorcycle while the other two departed in the automobile. She reported the car's license number and gave a general description of its occupants to the police.

The automobile was registered to a woman who lived with defendant. The next morning police officers drove to her residence and found the car parked in the driveway. For the next two hours, police kept the house and the car under surveillance. They were instructed to prevent anyone from leaving in the automobile. During that time detectives discovered, through inquiries with neighbors, that two men matching the general description of the suspected assailants lived in the house with the car's owner.

Without obtaining a warrant, police then entered the residence through both the front and back doors. Once inside, they asked the car's owner to consent to a search of both the house and the car. They warned that if she did not consent, she could be arrested for withholding evidence. After her signature on the consent form had thus been obtained, police conducted a thorough search of the premises and impounded and searched the car.

At trial, defendant admitted that on October 18,

1976, he drove three companions to the scene of the crime. However, he contended that he did so with the belief that they were there to perpetrate an insurance fraud, with the collusion of the victims. He claimed that he waited in the car while the others went inside and that he did not learn that there had been a robbery until the next day. Fearing that he would be arrested for a crime which he did not commit, he then panicked and fled the state.

### Automobile Search

The trial court suppressed evidence obtained in the search of the house on the ground that there was no valid consent and because there were no exigent circumstances to justify the warrantless search. However, the court denied the motion to suppress evidence obtained in the search of the car.[1] Defendant contends that the warrantless search and seizure of the automobile was invalid and evidence obtained therefrom should have been suppressed. He apparently concedes that police had probable cause to believe that the car was used in the crime and we hold that they did. *See, State v. Poole,* 11 Or App 55, 500 P2d 726 *rev den* (1972). However, defendant argues that there were no exigent circumstances to justify the seizure of the car

---

[1]The trial court's reasoning in upholding the search of the automobile is somewhat puzzling:

"We do have a principle on search and seizure of inevitable discovery, that even though the information obtained may not have been obtained by a search warrant at the particular time, if there is probable cause to search or seize this automobile and a subsequent search warrant could be obtained, then the inevitable discovery principle would apply and in this case, where the officers had this automobile under surveillance with instructions that no one should move that automobile, could move that automobile, the officers would in appropriate time, have obtained a warrant where they could have held this automobile, searched it, found whatever they could have found."

Whatever application the presumption of inevitable discovery may have in the context of the Fourth Amendment, it does not operate to justify a warrantless search. Normally, the inevitable discovery principle is applied to dissipate the taint of an illegal search upon subsequently discovered evidence. Its application in the present context would, as a practical matter, result in a wholesale abrogation of the warrant requirement.

and therefore, as with the search of the house, a warrant was required.

■ The courts have long distinguished between an automobile and a home in setting the type of exigent circumstances which will justify a warrantless search. *See, Carroll v. United States,* 267 US 132, 45 S Ct 280, 69 L Ed 543, 39 ALR 790 (1925). The warrantless search of an automobile upon probable cause has been justified because automobiles are "fleeting targets" which may be quickly moved out of the jurisdiction in which the warrant must be sought. *Chambers v. Maroney,* 399 US 42, 90 S Ct 1975, 26 L Ed 2d 419 (1970). In *Chambers* this rationale was used to uphold the search of an automobile which police had impounded after arresting its occupants. Application of the fleeting target analysis in that situation strongly suggests that it has become a legal fiction. Indeed the results, rather than the rationales, of the cases suggest that the rule with respect to automobile searches may well be that no warrant is ever required because the mobility of an automobile is itself a sufficiently exigent circumstance to justify a warrantless search. We have not gone so far in the past and need not do so here. This court has consistently upheld warrantless searches of automobiles where, as here, there was probable cause, with little or no discussion of the warrant requirement.[2]

Defendant argues that *Coolidge v. New Hampshire,* 403 US 443, 91 S Ct 2022, 29 L Ed 2d 564 (1971), requires a contrary result, but that is not so. The United States Supreme Court held in *Coolidge* that the Fourth Amendment requires a search warrant be judicial, not executive, in origin. That portion of the opinion dealing with the requirement of a warrant represented the views of a plurality, not a majority, of

---

[2] *State v. Warner,* 30 Or App 117, 566 P2d 546 *rev pending* (1977); *State v. Pennington,* 28 Or App 331, 559 P2d 915 *rev den* (1977); *State v. Krohn,* 15 Or App 63, 514 P2d 1359 *rev den* (1973); *State v. Miller,* 14 Or App 396, 513 P2d 508 (1973); *State v. Poole,* 11 Or App 55, 500 P2d 726 *rev den* (1972); *State v. Diaz,* 3 Or App 498, 473 P2d 675 *rev den* (1970).

the court. It is not law and the United States Supreme Court has since held repeatedly to the contrary, in harmony with our own decisions on the issue. *See, Adams v. Williams,* 407 US 143, 92 S Ct 1921, 32 L Ed 2d 612 (1972); *Schneckloth v. Bustamonte,* 412 US 218, 93 S Ct 2041, 36 L Ed 2d 854 (1973); *Almeida-Sanchez v. United States,* 413 US 266, 93 S Ct 2535, 37 L Ed 2d 596 (1973); *Cady v. Dombrowski,* 413 US 433, 93 S Ct 2523, 37 L Ed 2d 706 (1973); *United States v. Ortiz,* 422 US 891, 95 S Ct 2585, 45 L Ed 2d 623 (1975); *Texas v. White,* 423 US 67, 96 S Ct 304, 46 L Ed 2d 209 (1975); and *South Dakota v. Opperman,* 428 US 364, 96 S Ct 3092, 49 L Ed 2d 1000 (1976). Here, the mobility of the automobile was a sufficient exigent circumstance to dispense with the need for a warrant.

We hold therefore that the trial court properly refused to suppress evidence obtained in the search of the automobile.

### Flight Instruction

At trial, the court gave the following state requested jury instruction with respect to defendant's flight to avoid arrest:

"The flight of the defendant after the commission of the crime is not sufficient by itself to establish his guilt, but it is a fact which, if proven, may be considered by you in the light of all the other facts and circumstances in deciding the question of the defendant's guilt. It is your duty to determine whether or not there was such a flight and, if you find there was, then it is your duty to determine what the defendant's purpose or motive was which prompted him to so act. *Evidence of flight may be considered by you as an indication of defendant's awareness of guilt or his guilty intent.*" (Emphasis supplied.)

However, the court refused to give the following instruction requested by defendant:

"Evidence of flight has been introduced in this case. It may be considered by you only as one factor or circumstance in determining the guilt or innocence of defendant. In weighing evidence of flight upon the issue of guilt or innocence, you may consider not only the

evidence of flight itself, but also all other facts and circumstances which tend to effect the defendant's decision to flee; for example, *that defendant was in fear of being charged with a crime he did not commit.*" (Emphasis supplied.)

Subsequent to the trial in this case, we held in *State v. McCormick,* 28 Or App 821, 561 P2d 665, *rev allowed* (1977), that the refusal to give defendant's requested flight instruction was not error because such an instruction is an improper comment upon the evidence by the court which need never be given. As we noted in *McCormick,* one problem with the flight instruction is that by pointing to one inference that may be drawn from evidence of flight, the trial court "lends credence to the arguable inference and suggests to the jury it must be made." 28 Or App at 826.

■ This case is distinguishable from *McCormick,* however. The issue here is not whether such an instruction need be given at all, but rather whether it is error to refuse to give an instruction authorizing the inference from flight advanced by the defendant where the court has given a flight instruction authorizing the inference advanced by the prosecution. Stated more abstractly, where the court chooses to comment partially on evidence of flight, is it error to refuse to do so completely?

■■ Here, defendant testified that his flight was prompted by his fear of being wrongly accused of a crime. He was as much entitled to an instruction regarding that inference as was the state regarding the inference of guilt. As the Supreme Court noted in *State v. Hogg,* 64 Or 57, 62, 129 P 115 (1913), "[a]ll the circumstances of the supposed flight of the defendant should be allowed to go to the jury, and the instruction should cover not only the theory of the prosecution but also that of the defendant." The trial court was obligated to instruct as to the defendant's theory of the case if that theory is supported by evidence. *State v. McWilliams,* 29 Or App 101, 562 P2d 577 *rev den* (1977); *State v. Forsyth,* 20 Or App 624, 533 P2d 176

*rev den* (1975); *State v. Ollison,* 16 Or App 544, 519 P2d 393 (1974).

■ Where the prosecutor urges the jury to draw this inference, defense counsel urges the jury to draw that inference, and the court instructs the jury that this inference is valid but is silent about that inference, the likely effect is to judicially validate the prosecution theory and undermine the defense theory. Therefore, refusal of defendant's flight instruction was error and, because there is a reasonable possibility that it affected the verdict, *State v. Van Hooser,* 266 Or 19, 511 P2d 359 (1973), the error is prejudicial and requires reversal and remand. Under *State v. McCormick,* as it now stands, no flight instruction should be given upon retrial.

### Other Assignments of Error

Because of the possibility that their disposition will become relevant upon retrial, we briefly consider defendant's other assignments of error.

■ Defendant contends that the trial court erred in refusing to give an alibi instruction. We hold that such an instruction was unnecessary. *State v. Dudley,* 29 Or App 471, 564 P2d 711 *rev pending* (1977).

■■ Defendant was sentenced to ten years imprisonment for one count of robbery and to two concurrent five-year terms of probation on the remaining two counts, said terms to commence upon defendant's release from confinement. The state correctly concedes that the sentences were improper both because only one sentence should have been imposed, *State v. Woolard,* 259 Or 232, 484 P2d 314, 485 P2d 1194 (1971), and because the court had no authority to delay the commencement of probation for potentially more than five years, *State v. Maddox,* 29 Or App 787, 564 P2d 1372 *rev pending* (1977).

Reversed and remanded for a new trial.