Argued October 17, 1977, affirmed January 30, 1978

# STATE OF OREGON, *Respondent,*
## *v.*
# RONNY GRODA, *Appellant.*
## (No. C76-12-17014, CA 8272)

573 P2d 1269

Thomas L. Mason, Portland, argued the cause and filed the brief for appellant.

John W. Burgess, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton and Buttler, Judges.

SCHWAB, C. J.

**SCHWAB, C. J.**

This appeal presents the question of whether there was probable cause for the warrantless search of defendant, his vehicle and a briefcase found in it, upon his arrival at a residence which was the scene of substantial illegal activity in drugs. The trial court held that there was, denied defendant's motion to suppress evidence resulting from the search and convicted him of criminal activity in drugs, ORS 167.207, after trial without a jury. Defendant assigns as error the denial of his pretrial motion to suppress.

The events leading up to defendant's arrest began when two undercover officers of the Portland Police Department gained the confidence of a woman who agreed to assist them in obtaining large quantities of amphetamines. She took the officers to her contact, a Mr. Tuttle, who took the officers to an address in northeast Portland. The officers gave him $1,100 with which to purchase 10 jars of amphetamines, each containing 1,000 tablets. While they waited in the car, Tuttle went into the house, and another man, named Shafer, came out of the house, took a bag from a parked automobile and returned to the house. About 10 minutes later, Tuttle returned with the illegal drugs and was arrested.

In the meantime reinforcements arrived, and when Tuttle returned to the car with the drugs six officers (Johnston, Burger, Huff, Houck, Zahler and Gearhart) entered the house where Tuttle obtained the drugs. They observed Shafer sitting at the kitchen table with a large quantity of assorted drugs, a calculator, notebook and pencil in front of him. Two of the officers recognized the odor of "fresh" amphetamines. Shafer and two other persons were then arrested, and the house was thoroughly searched.

While the officers were in the house the telephone rang some time between 6 p.m. and 7 p.m. and Officer Huff answered it. The caller asked for Richard. Huff said Richard was busy and to call back. Before Huff

could hang up, the caller said: "Wait a minute; this is Ronny—Tell him they're done and I'm on my way over." Officer Huff said that he hypothesized that Ronny was talking about amphetamines, because he knew from experience that they were dried as part of the manufacturing process, and that Ronny's message could be interpreted to mean that the amphetamines were now dried and he would be bringing them over. At the suppression hearing, the state stipulated that it could have meant that they were done with dinner and that Ronny would be right over. Officer Huff related the telephone message to some of the other officers, and they decided to wait for Ronny to arrive at the residence.

While they were waiting, at least two other persons arrived on the scene and were arrested upon arrival. About one hour after the telephone call, Officer Houck, who was waiting outside alone, saw two men drive up in a car, park across the street from the house and get out. As they approached, Officer Houck asked if one of them was Ronny, and defendant, who was carrying a calculator and a notebook, said that he was. Defendant asked Officer Houck if she was the one waiting for the LBs (translated as referring to pounds of marihuana); she said she was, and told him to go on in. This conversation was not related to any of the other officers. Officer Houck went to the door with the men. When it was opened she identified herself and the others as police officers. She stated to the waiting officers, "This is Ronny, he hasn't been searched yet."

As soon as defendant entered the house, he was searched by Officers Johnston and Burger. Officer Houck was not present. No weapons or other contraband were found, but Officer Burger removed a large sum of money—approximately $2,700—from defendant's pocket. Defendant's car keys were taken from him and given to Officers Gearhart and Johnston who proceeded to defendant's car. Officer Gearhart went directly to the trunk, unlocked it and found a briefcase. Johnston searched the passenger compartment

and found nothing. Officer Gearhart opened the briefcase and found illegal drugs. Thereupon, defendant was arrested. It is the money and drugs which defendant sought to suppress.

Defendant concedes the right of the police to stop him when he arrived at the residence where the illegal drug activity was going on, and concedes the right of the police to pat him down to determine if he had any weapons. He contends, however, that there was no probable cause to justify a search of his person, and that even if there was probable cause to search him there were no exigent circumstances justifying the warrantless search of his automobile or the briefcase in the locked trunk compartment.

1. We disagree with defendant as to both of his contentions. Arguably, the telephone call in itself was sufficient to give the police probable cause to search defendant for evidence of a crime. As is pointed out in LaFave, *Search and Seizure: "The Course of True Law * * * Has Not * * * Run Smooth,"* 1966 Ill L Forum 255 (1966):

> "The requirement of probable cause does not mean that there must be 'a showing of guilt beyond a reasonable doubt'; what is needed is 'reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief.' In terms of the quantum of evidence required, this is substantially the equivalent of the probable cause needed for an arrest warrant and of the reasonable grounds needed for arrest without warrant * * *." 1966 Ill L Forum, *supra* at 259-60, cited with approval in *State v. Keith,* 2 Or App 133, 142, 465 P2d 724, *rev den* (1970).

In any event, when we add to the telephone call the statement the defendant made to Officer Houck at the scene there was a surfeit of probable cause. It avails the defendant nothing that the police who actually searched him did not assume from Officer Houck's statement to them that she was saying, in effect, "I have probable cause to search him and direct you to carry out the search." *State v. Cloman,* 254 Or 1, 12,

456 P2d 67 (1969), tells us that "* * * if the officers had probable cause to arrest, the arrest is not rendered illegal because the officers expressed another and improper cause for arrest." In *State v. Mickelson,* 18 Or App 647, 526 P2d 583, *rev den* (1974), we said:

> "* * * [P]robable cause to arrest must be evaluated on the basis of the collective information of the police rather than that of only the arresting officer. Cases in which courts have adhered to this principle are those where the arresting officer acted with an awareness or reasonable belief that fellow officers have information sufficient to constitute probable cause * * *. These courts recognize that effective law enforcement often requires police officers to work as a single unit. A police officer working in a team or in a modern police organization is entitled reasonably to arrest or search on the command or summary information of another officer. But somewhere in joint police action there must be a nexus between the probable cause and the invasion of privacy, between the justification and the act." 18 Or App at 650-51.

■ Officer Houck's knowledge, coupled with her statement to the officers who then made the search, provided the required nexus. Defendant's contention that, even assuming probable cause to search his person, it did not extend to his automobile which he had driven to the scene, or to the briefcase located in it, is answered to the contrary by *State v. Downes,* 31 Or App 419, 571 P2d 914 (1977), and *State v. Greene,* 30 Or App 1019, 568 P2d 716 (1977).

Affirmed.

**BUTTLER, J.,** dissenting.

I respectfully dissent because: (1) I do not think the telephone call alone gave the police officers probable cause to search without a warrant; and (2) I do not think the record supports the majority's assumption that the officers who performed the warrantless search acted with an awareness or reasonable belief that fellow officers had information sufficient to

constitute probable cause, and the state does not so contend.

At the outset, we should remind ourselves that where the motion to suppress challenges evidence seized as the result of a warrantless search, the burden of proving the validity of the search is on the prosecution. ORS 133.693(4).[1] The burden of proof carries with it the burden of persuasion. McCormick, Evidence, § 336 (2d ed E. Cleary 1972). With respect to the contention that the telephone call alone constituted probable cause, I do not think the state has met its burden; with respect to the searching officers' having acted on the basis of collective knowledge, the state does not even urge the proposition, so it is difficult to understand how it has fulfilled its burden of persuasion.

The state's only contention here is that the officers had probable cause to search defendant and his car upon his arrival at the scene after making the telephone call. That contention conforms to the testimony of the officers who searched defendant. In my opinion, those facts were sufficient to give the police a reasonable suspicion to believe that defendant had committed a crime, permitting them to stop him and make a reasonable inquiry, ORS 131.615(1),[2] and to pat him down to see if he had any weapons. *Terry v. Ohio,* 392 US 1, 88 S Ct 1868, 29 L Ed 2d 889 (1968). Since they

---

[1]ORS 133.693(4) provides:

"Where the motion to suppress challenges evidence seized as the result of a warrantless search, the burden of proving by a preponderance of the evidence the validity of the search is on the prosecution."

*See State v. Miller,* 269 Or 328, 334, 524 P2d 1399 (1974), in which the Supreme Court said:

"In considering the sufficiency of the motions to suppress in this case it must be kept in mind that a search and seizure without a warrant is per se unreasonable and that the state has the burden to establish the legality of the search in such a case. * * *"

[2]ORS 131.615(1) provides:

"A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that he is a peace officer, make a reasonable inquiry."

did not feel any object that might be a weapon, they could not go any further. *State v. Gressel,* 276 Or 333, 554 P2d 1014 (1976).

The majority seems to say that probable cause exists if there is "reasonable ground for suspicion," quoting from a law review article quoted in *State v. Keith,* 2 Or App 133, 142, 465 P2d 724, *rev den* (1970). If there is a difference between a reasonable suspicion (ORS 131.615(1)), which the legislature has provided authorizes a "stop" but not an arrest, search or seizure, and a "reasonable ground for suspicion," which the majority states constitutes probable cause authorizing a search, etc., we are not told. The problem may be in the fact that *Keith* was decided in 1970 and the statute was enacted in 1973.

I do not agree that an ambiguous telephone message: "Tell him they're done and I'm on my way over," which was given to a complete stranger to the defendant at dinner time may give rise to a "well-warranted suspicion"[3] that the caller would be bringing more drugs to the house. While that message could make the officer reasonably suspicious that the defendant had committed the crime of criminal activity in drugs, it does not rise above that.

In *State v. Ford,* 20 Or App 384, 531 P2d 740 (1975), we held, on more provocative facts than appear here, that probable cause was lacking to permit a warrantless search. There, the defendant arrived at a house where officers were in the process of successfully executing a search warrant for amphetamines and related paraphernalia. An officer thought he recognized defendant as a person present during the execution of a search warrant for illegal drugs a year earlier. He had also heard that defendant had been involved in the illicit sale of amphetamines within the preceding 90 days. This information would appear to

---

[3] *State v. Evans,* 16 Or App 189, 517 P2d 1225, *rev den* (1974).

be the substantial equivalent of the ambiguous telephone call Officer Huff answered in the instant case: it was enough to arouse a reasonable suspicion.

After defendant Ford entered the house, the officer approached to within about three feet of him and observed a bent spoon in the breast pocket of the shirt defendant was carrying. The officer considered the bent spoon to be of the type used to cook amphetamine drugs, and took it from defendant. As he did so, he noticed in the same pocket a vial, which he also seized. The vial contained an olive-colored liquid which the officer's experience told him was amphetamine sulphate. Suppression of the spoon and vial was upheld by this court.

In *State v. Parks, State v. Tarpley, Jr.,* 5 Or App 601, 485 P2d 1246 (1971), the pipe, which drew police attention to the defendant, was recognized as of a type commonly used to smoke hashish, but could also be used to smoke tobacco; yet its presence in plain view was held insufficient to provide probable cause. *Cf. State v. Chipley,* 29 Or App 691, 564 P2d 1096, *rev den* (1977). In the case at bar, the state stipulated at the suppression hearing that the telephone message could have meant that they were done with dinner and that Ronny would be right over.

Given the testimony of the searching officers and the contention of the state in this court, I would reverse for the foregoing reasons. The majority, however, has assumed the burden of persuading itself (successfully) that since Officer Houck had all of the collective information which would be sufficient to constitute probable cause, the warrantless search was valid. I would agree if she had passed that information on to the officers who searched defendant, or even if they had testified that they assumed Officer Houck had information in addition to the telephone call about which they already knew. *But they did not.* The situation is as if Officer Houck did not know anything.

The majority relies on *State v. Cloman,* 254 Or 1, 456 P2d 67 (1969). There the arresting officers had sufficient facts to constitute probable cause to arrest, but did not articulate their justification properly. Here the searching officers did not have sufficient facts to justify the search. Surprisingly, the majority also relies on *State v. Mickelson,* 18 Or App 647, 526 P2d 583, *rev den* (1974), which holds that even though officers working as a team may have collective knowledge which would constitute probable cause, if that knowledge is not communicated in such a way that the officer who searched the defendant had an awareness or reasonable belief that there was probable cause, the warrantless search is invalid. We recognized, nevertheless, that:

> "* * * A police officer working in a team or in a modern police organization is entitled reasonably to arrest or search on the command or summary information of another officer. *But somewhere in joint police action there must be a nexus between the probable cause and the invasion of privacy, between the justification and the act.*" 18 Or App at 650-51. (Emphasis added.)

We also said:

> "* * * To hold the search in this case justified would encourage police officers to search on the hope that the total knowledge of all those officers involved in a case will later be found to constitute probable cause if the search is challenged. We think it better to require that an arresting officer reasonably believe that his fellow officers have probable cause before he arrests or searches on the basis of their knowledge." 18 Or App at 650.

In *State v. Crossen,* 21 Or App 835, 838, 536 P2d 1263, *rev den* (1975), we reiterated our concern for the "search now and justify later" approach to the state's invasion of individual privacy and freedom; we said that such a dilution of the exclusionary rule "would encourage unlawful searches in the hope that probable cause would be developed after the fact."

In this case, the nexus we required in *Mickelson* is missing. As a result, the majority opinion encourages

warrantless searches which may be justified fortuitously *ex post facto.* I would reverse, and therefore respectfully dissent.