Argued October 10, 1978, reversed and
remanded February 27, 1979

# STATE OF OREGON, *Respondent,*
*v.*
# RONNY GRODA, *Petitioner.*
## (No. C76-12-17014, CA 8272, SC 25760)

591 P2d 1354

Thomas L. Mason, Portland, argued the cause and filed the briefs for petitioner.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. On the brief were James A. Redden, Attorney General, Al J. Laue, Solicitor General, and John W. Burgess, Assistant Attorney General, Salem.

DENECKE, C. J.

Bryson, J., did not participate in the decision in this case.

Holman, J., concurring.

Lent, J., specially concurring.

**DENECKE, C. J.**

This is another of the search and seizure cases we have taken on review. *State v. Groda,* 32 Or App 287, 573 P2d 1269 (1978); *State v. Greene,* 30 Or App 1019, 568 P2d 716 (1977); *State v. Fondren,* 30 Or App 1045, 568 P2d 721 (1977); *State v. Downes,* 31 Or App 419, 571 P2d 914 (1977).

In addition to the automobile search problem we also granted review because of the issue of probable cause to search the defendant's person.

An undercover officer learned that he could get amphetamines at a house in Portland. Police officers entered the house and arrested four persons for drug offenses, including activity in amphetamines. Thousands of amphetamines were found in the house. While they were there the telephone rang, officer Huff answered, and the caller asked if Richard were there. The officer said he was busy and to call back. The caller said, "[T]his is Ronny—Tell him they're done and I'm on my way over." Officer Huff related the conversation to the other officers and they decided to wait for Ronny, who they believed would arrive with amphetamines.

After the telephone call, another man entered the house and he was arrested because of an outstanding warrant. Then, a second person entered; he was searched and was found to have amphetamines on his person. He was arrested. About an hour and a half after the telephone call the defendant drove up, parked and approached the house. He identified himself as Ronny to a plain clothes officer, Officer Houck, and asked Houck if she was the one waiting for the marijuana. He went into the house and officer Houck told the officers inside that this was Ronny and he had not been searched and the officers inside searched him. In his hand he had a notebook and a small hand calculator. In his pockets he had car keys and several thousand dollars. The searchers found no drugs. An

[323]

officer took the defendant's car keys and opened the trunk of defendant's car. Inside was an unlocked briefcase which the officer searched either while the briefcase remained in the trunk or immediately after he removed it. He found the drugs in the briefcase.

The defendant filed a motion to suppress, and after a hearing the trial court denied the motion both as to the evidence found by a search of defendant's person and by a search of the briefcase in the defendant's car trunk. The Court of Appeals affirmed, relying upon its decisions in *State v. Greene, supra* (30 Or App 1019); and *State v. Downes, supra* (31 Or App 419).

The defendant contends there was no probable cause to search his person. *State v. Gressel,* 276 Or 333, 337, 554 P2d 1014 (1976). He argues that the majority of the Court of Appeals erred in concluding that the officers had probable cause to search him because the court erroneously assumed that the searching officers had all the information that Officer Houck learned from defendant as he came to the house. Officer Houck was the plain clothes officer who met defendant at the entrance to the house. There was no evidence that Officer Houck communicated to the searching officers that defendant asked her if she were the one waiting for the marijuana.

■ We are of the opinion that the rule announced by the Court of Appeals in *State v. Mickelson,* 18 Or App 647, 650-651, 526 P2d 583 (1974), is the proper rule for determining whether a searching officer has probable cause. We understand that rule to be that the searching officer personally must have information which constitutes probable cause, or the searching officer must be directed to make the search by an officer who personally has that knowledge. It is sufficient if the officer making the search on his own knowledge has secured the knowledge from another officer.

The contention of the defendant that there was no probable cause to search his person needs dissection.

In *State v. Gressel,* 276 Or 333, 337, 554 P2d 1014 (1976), we found there was no probable cause to search the defendant's person. Therefore, we did not have to determine whether the police could search the person if the only basis was that they had probable cause to believe he had evidence of a crime on his person.

Admittedly, in this case the officers did more than "stop and frisk" the defendant. The officers "took" the defendant into the kitchen, advised him of his rights, "patted him down," and took his money and car keys from his pockets. At the time the defendant was searched, he had not been told that he was under arrest. At some time, probably after the drugs were found in the briefcase, the defendant was formally arrested for the purpose of "charging him with an offense."

■ We conclude that when the defendant was searched he was "arrested" as that word is defined in ORS 133.005(1), which provides:

> " 'Arrest' means to place a person under actual or constructive restraint or to take a person into custody for the purpose of charging him with an offense. A 'stop' as authorized under ORS 131.605 to 131.625 is not an arrest."

We consider that when the officers searched the defendant, they placed him "under actual * * * restraint." This was the conclusion we reached in *State v. Krogness,* 238 Or 135, 146-147, 388 P2d 120, *cert den* 377 US 992, 84 S Ct 1919, 12 L Ed2d 1045 (1964):

> "* * * As a practical matter, it is difficult to explain how the police can search an individual without arresting him, since any substantial detention without his consent would fit the definition of an arrest found in such criminal cases as *State v. Christensen,* 151 Or 529, supra, and such civil cases as *Lukas v. J.C. Penney Co.,* 233 Or 345, 378 P2d 717 (1963). * * *."

■ A search of a person without a warrant is permissible as an incident to arrest and the search of the defendant was valid for this reason. The reason a

search without a warrant is permissible as an incident to arrest is to protect the officer and to avoid the destruction or disappearance of evidence. *Chimel v. California,* 395 US 752, 762-763, 89 S Ct 2034, 23 L Ed2d 685 (1969); *State v. Chinn,* 231 Or 259, 267, 373 P2d 392 (1962). These reasons are applicable in the search of the defendant in this case.

■ In order to arrest a person without a warrant, the officer must have probable cause to believe that a crime has been or is being committed by the arrested person. (In this case we do not need to amplify on the nature of the crime.) In the present case the officers had to have probable cause to believe that the defendant was engaging in a crime encompassing the possession of drugs.

We are of the opinion that the officers searching defendant personally had information, apart from that possessed by Officer Houck and not communicated to the other officers, that provided probable cause to arrest or seize the defendant. Defendant's telephone call in which he stated, "they are done and I am on my way over," stated in a conversation to a person in a house in which amphetamines were found in great quantity would most likely mean to an officer experienced in the drug traffic that amphetamines were cooked and the caller was bringing them to the house. The officers already had sufficient probable cause to arrest the people in the house for activity in drugs. One subsequent visitor to the house brought amphetamines. The defendant had in his hands a small calculator and notebook which, according to the officers, are common tools of the amphetamine trade.

■ As previously related, after the search of defendant's person, the officers seized defendant's car, searched the trunk, opened and searched a closed briefcase seized in the trunk, and found the drugs. We will assume, without deciding, that the officers had probable cause and there were exigent circumstances to justify the officers' seizing and searching the car

pursuant to the principle of *Carroll v. United States,* 267 US 132, 45 S Ct 280, 69 L Ed 43, 39 ALR 790 (1925), and *Chambers v. Maroney,* 399 US 42, 90 S Ct 1975, 26 L Ed2d 419 (1970). If the officers had this power, the defendant does not contest that the officers could seize, as distinguished from search, the briefcase. We hold, however, that the officers could not constitutionally search the briefcase without a warrant. We rely on *United States v. Chadwick,* 433 US 1, 97 S Ct 2476, 53 L Ed2d 538 (1977), for our decision.

In *State v. Downes,* 285 Or 369, 591 P2d 1352 (1979), we discussed *Chadwick* as follows:

"In *Chadwick* narcotic agents had probable cause to believe a locked footlocker shipped to Boston by rail contained marijuana. The agents observed the defendant claim the footlocker in Boston and have it carried to the trunk of a waiting car. Before the car could be started or the trunk closed, the agents arrested defendant and the others with him. The agents took the footlocker to the Federal Building. About an hour and one-half after the footlocker was brought into the building the agents opened it and found marijuana. No warrant was obtained authorizing this search.

"A majority of seven, in an opinion written by the Chief Justice, held that there being no exigent circumstances, the warrantless search could not be upheld. The government argued that the rationale of the automobile search cases demonstrates the validity of this search. The majority acknowledged that in the automobile search cases the Court sustained warrantless searches:

" '[I]n cases in which the possibilities of the vehicle's being removed or evidence in it destroyed were remote, if not nonexistent.' * * *.

" 'The answer [why the *Chadwick* case is not governed by the automobile search cases] lies in the diminished expectation of privacy which surrounds the automobile:

" '* * * * *.

" 'The factors which diminish the privacy aspects of an automobile do not apply to respondent's footlocker. * * *.' 433 US at 12-13.

[327]

"The majority also held that the footlocker's mobility does not dispense with the warrant requirements because once the footlocker had been brought to the Federal Building, the locker or its contents could not have been removed."

The one distinction between *Chadwick* and this case which could be significant is that in *Chadwick* the footlocker was taken to the Federal Building before it was searched. However, from all the evidence in this case, it was no more likely that the briefcase or its contents would be taken from the officers than it was likely that the contents of the footlocker in *Chadwick* would be taken. An officer had possession of the briefcase; he was in the company of several other officers; and the defendant and all other persons thought to be involved in the drug traffic were in the house.

After argument the Attorney General's office informed us of the decision in *State v. Sanders,* 262 Ark 595, 559 SW2d 704, cert granted ____ US ____, 99 S Ct 247, 58 L Ed2d 236 (1978), and that the United States Supreme Court had granted the State of Arkansas' petition for certiorari in that case. *Sanders* is factually very similar to our present case. In *Sanders,* the police stopped a cab in which defendant was riding, ordered the defendant and the other occupant out of the vehicle, and told the driver to open the trunk in which a suitcase was found. The police had probable cause to believe drugs were in the suitcase. They immediately opened the suitcase and found drugs. The Arkansas court, relying upon *Chadwick,* held the police could not validly open the suitcase. "Once the Little Rock police had seized appellant's suitcase from the trunk of the taxicab and had the suitcase under their exclusive control, there was not the slightest danger that the suitcase or its contents could have been removed before a valid search warrant could be obtained." 262 Ark at 600. We conclude that this case cannot reasonably be distinguished from *Chadwick.*

*Chadwick* may be an aberration and the forthcoming United States Supreme Court decision in *Sanders v. State, supra* (262 Ark 595), may substantially limit its scope. If this occurs we will have to re-examine this area of the law of search and seizure. As Mr. Justice Linde points out in his concurring opinion in *State v. Greene, supra* (285 Or 337), this is the disadvantage of attempting to follow decisions of the United States Supreme Court to set the Oregon law of search and seizure. But this is the course, however, we have chosen in the present case. In following it we must rely upon the past decisions of the United States Supreme Court rather than speculating on changes in direction by that Court which are not indicated by past opinions.

Reversed and remanded.

**HOLMAN, J.,** concurring.

It is my conclusion that there were no exigent circumstances which made it proper for the police to search defendant's vehicle. The driver was under arrest and the police were in possession of the vehicle's keys. It is always possible that there is another set of keys which some third party might possess, but if this possibility is sufficient to amount to exigent circumstances, the police will almost always be able to seach a vehicle because there will always be this possibility.[1] Defendant was not arrested in his vehicle and the search of the vehicle cannot be justified as incident to his arrest.

**LENT, J.,** specially concurring.

I concur without reservation in that portion of the majority opinion approving the rule announced in *State v. Mickelson,* 18 Or App 647, 526 P2d 583 (1974), as that rule is interpreted in the majority opinion in this case.

---

[1] My personal inclination would be to hold that no part of a vehicle is an enclave of privacy, but such a ruling would be impossible under the present decisions of the United States Supreme Court.

[329]

Although I believe the question to be very close on whether there was probable cause to believe that defendant was commmitting a crime "encompassing the possession of drugs" and, therefore, subject to arrest ("seizure") without a warrant, the majority has persuaded me this is so; consequently, I concur in that portion of the majority's opinion. Since there was probable cause to believe defendant was committing a crime, it follows that he could be seized without a warrant.[1] The majority finds that defendant was arrested under the statutory definition, ORS 133.005(1), when the search took place in the kitchen, and his money and car keys were removed from his pockets. With that I agree, and therefore, concur.

Because there was an arrest there was a right to search defendant without a warrant. *Chimel v. California,* 395 US 752 (1969), and *State v. Chinn,* 231 Or 259, 373 P2d 392 (1962), hold, respectively, that such a search is not prohibited by the United States and Oregon Constitutions because it is necessary for the protection of the officer(s) and to avoid loss of evidence.[2] For the purposes of this case and this decision I am still in tune with the majority and accordingly concur.

At this point the majority assumes, "without deciding," that the warrantless seizure and warrantless search of the car and its trunk were valid under *Carroll v. United States,* 267 US 132 (1925), and *Chambers v. Maroney,* 399 US 42 (1970). I recognize that the majority does so because of its willingness to hold invalid the warrantless search of the briefcase, *which is sufficient to dispose of this case.* Since I

---

[1] "A peace officer may arrest a person without a warrant if the officer has probable cause to believe that the person has committed: * * * [a]ny * * * offense in the officer's presence." ORS 133.310(1)(b).

"An offense is conduct for which a sentence to a term of imprisonment or to a fine is provided by any law of this state * * *." ORS 161.505.

[2] *Compare,* the scope of warrantless intrusion permitted under *United States v. Robinson,* 414 US 218 (1973) and *State v. Florance,* 270 Or 169, 527 P2d 1202 (1974).

believe we should not exercise our discretionary review role *merely to decide* the case at hand, I am not content here with that case disposition device. *See* my concurring opinion in *State v. Classen,* 285 Or 221, 590 P2d 1198 (1979). I believe that the discretionary review function and an orderly approach demand some examination of whether the seizure and search of the car were permissible.

Certain fundamental propositions[3] should be kept in mind. Warrantless seizures and searches are *per se* unreasonable and where there is a motion to suppress evidence obtained thereby, "the burden of proving by a preponderance of the evidence the validity of the search is on the prosecution." ORS 133.693(4).[4]

I believe the warrantless seizure of the car was permissible. The officers had reasonable cause to believe the defendant came to the house to deliver amphetamines. An officer saw the defendant drive up and park. There is nothing in the record to indicate he divested his person of anything between car and house. Since no amphetamines were found in the search of his person, it was reasonable to infer they would be in the car. This leads me to the conclusion that the officers could legitimately detain the car (at least at the scene) without a warrant.

To justify the warrantless search of the car, the state is required to bring the case within one of the recognized exceptions to the need for a warrant. The search of defendant's car in this case is certainly

[3] Even more fundamental propositions are not addressed because of the implicit assumptions that the places searched and the things seized are constitutionally protected and that defendant has "standing," but it is well to remember that analysis must always start with such matters.

[4] In *State v. Warner,* 284 Or 147, 585 P2d 681 (1978), we noted our uneasiness with the quantum of proof required by *State v. Douglas,* 260 Or 60, 68, 488 P2d 1366, 1370 (1971), to establish the "consent" exception to the need for a warrant. It would appear that the enactment of ORS 133.693(4) since the time of the search in *Douglas* fixes the quantum as a preponderance of the evidence unless *Douglas* is read to require impliedly a greater quantum on state constitutional grounds. *See, State v. Warner, supra* n. 3, 284 Or at 160, 161, 585 P2d at 688.

[331]

outside the *Chimel* and *Chinn* exceptions, for defendant was inside the house and under arrest; consequently, there was no danger that he could have reached the car to obtain a weapon or to destroy evidence. Warrantless search, accordingly, must depend upon another exception. I assume the "movable vehicle" exception to be the only arguable one. This exception requires that the object searched be a vehicle (obviously satisfied here) and that there be probable cause to search the vehicle (satisfied by the reasonable belief that it contained contraband). There is another key requirement; namely, that the vehicle be movable, more accurately, that it be *mobile as of the time it was seized.* This requirement is not satisfied.

The literal meaning of "movable" or "mobile" is inapplicable. Certainly, a motor vehicle is capable of being moved by its very nature. The true question is whether the record shows a reasonable likelihood that the vehicle would be moved if not seized.[5]

> "* * * In this case, it is, of course, true that even though Coolidge was in jail, his wife was miles away in the company of two plainclothesmen, and the Coolidge property was under the guard of two other officers, the automobile was in a literal sense 'mobile.' A person who had the keys and could slip by the guard could drive it away. *We attach no constitutional significance to this sort of mobility."*(Emphasis added.) *Coolidge v. New Hampshire,* 403 US 443, 461, n. 18 (1971).

Here the driver (defendant) was under arrest, and the police had the car keys. There were sufficient police present to guard against the remote possibility that a confederate with another set of keys would take the car.[6]

---

[5] Mr. Justice Brennan, dissenting in *Cady v. Dombrowski,* 413 US 433, 451, 93 S Ct 2523, 37 L Ed 2d 706 (1973), finds "reasonable likelihood" to be the rule of *Coolidge v. New Hampshire,* 403 US 443 (1971).

[6] In *Coolidge v. New Hampshire, supra* n. 5, the court found, as I have here, that there was probable cause, but there the court found no exigent circumstances to justify the police in proceeding without a warrant. *Compare* that case with this:

It is impossible for me to find from these circumstances a reasonable likelihood that this vehicle would (or even could) be moved if not searched. I would not, therefore, uphold the warrantless search of this car. That would close the matter.

The majority, having assumed the validity of the warrantless search of the car, notes that if the police had that power, defendant does not contest the seizure of the briefcase but only its search. The majority finds this search prohibited by *United States v. Chadwick,* 433 US 1 (1977), and I agree. In light of the majority's speculation concerning the future of *Chadwick,* I believe some further discussion of the search of the briefcase is desirable.

We have another *per se* unreasonable seizure and search in violation of the state and federal constitutions (United States Constitution, Am IV; Oregon Constitution, Art I, § 9) unless the state establishes by the preponderance of the evidence (or perhaps by some greater quantum: *State v. Douglas,* 260 Or 60, 488 P2d 1366 (1971); *cf.* n. 5, *supra)* that the seizure and search were valid under some exception to the need for a warrant.

Can there be a "mobile briefcase" exception to the need for a warrant? Consider before continuing some further language, not from *Chadwick* but from

"The word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears. And surely there is nothing in this case to invoke the meaning and purpose of the rule of *Carroll v. United States*—no alerted criminal bent on flight, no fleeting opportunity on an open highway after a hazardous chase, no contraband or stolen goods or weapons, no confederates waiting to move the evidence, not even the inconvenience of a special police detail to guard the immobilized automobile. In short, by no possible stretch of the legal imagination can this be made into a case where 'it is not practicable to secure a warrant,' *Carroll, supra,* at 153, and the 'automobile exception,' despite its label, is simply irrelevant." 403 US at 461-62. (Footnote omitted.)

*Coolidge.* Immediately following the language concerning "mobility" I have quoted *supra,* from n. 18 in *Coolidge v. New Hampshire,* 403 US at 461 appears the following language in the same footnote:

> "First, a good number of the containers that the police might discover on a person's property and want to search are equally movable, e.g., trunks, suitcases, boxes, *briefcases,* and bags. How are such objects to be distinguished from an unoccupied automobile—not then being used for any illegal purpose—sitting on the owner's property? It is true that the automobile has wheels and its own locomotive power. But given the virtually universal availability of automobiles in our society there is little difference between driving the container itself away and driving it away in a vehicle brought to the scene for that purpose. Of course, if there is a criminal suspect close enough to the automobile so that he might get a weapon from it or destroy evidence within it, the police may make a search of appropriately limited scope. *Chimel v. California,* 395 U.S. 752. \* \* \* But if *Carroll v. United States,* 267 U.S. 132, permits a warrantless search of an unoccupied vehicle, on private property and beyond the scope of a valid search incident to an arrest, then it would permit as well a warrantless search of a suitcase or a box. We have found *no case* that *suggests such an extention* of *Carroll.* \* \* \*" (Emphasis added.)

There is no question raised as to the fact that the briefcase is within the terms of the constitutional protection and the fact that defendant has standing.

As noted before, I interpret *Coolidge* to hold that there must be a reasonable likelihood that the object to be searched could or would be moved if not seized.[7] In

[7] "The extent to which an object that the police wish to search is movable may well be relevant in determining whether sufficient 'exigency' is present to justify an immediate, warrantless search. However, just as the word 'automobile' is not 'a talisman in whose presence the Fourth Amendment fades away,' the inherent mobility of the object to be searched cannot, without more, justify a failure to secure a warrant. The question in each case is not simply whether the item searched is movable; rather, the question is whether, in light of the 'realities of the situation,' there was a

this sense, there was no constitutional mobility. The briefcase was clutched in the hands of a police officer. It was not necessary to open the briefcase to prevent its removal from police control. If the seizure of the briefcase was valid, the officers could keep it in custody and procure a warrant to search it (assuming probable cause to believe it contained evidence of crime).

I reach the result that the search of the briefcase was invalid under what was said in *Coolidge,* and I agree it was invalid under what was held in *Chadwick.* This container was precisely the same kind as the footlocker in *Chadwick.* The expectation of privacy for the contents of a briefcase[8] is at least as great as for a footlocker's contents, *and* this briefcase when searched was "completely and totally within the officers' control."

I would, also, hold the warrantless search of the briefcase to be impermissible under Art I, § 9, Or Const, and thus be entirely free from concern as to what the United States Supreme Court might do in the future about limiting *Chadwick. Compare,* the concurring opinion of Justice Linde in *State v. Greene,* 285 Or 337, 591 P2d 1362 (1979). *Compare,* also, the action of the South Dakota Supreme Court in *State v. Opperman,* 247 NW2d 673 (1976), holding on remand a search to be invalid under the state constitution when

---

reasonable likelihood that the item *would be moved* before a warrant could be obtained. Where the possibility of movement is only remote or speculative, the police are simply not confronted with the kind of urgency which would excuse them from the warrant requirement. *See Coolidge, supra* at 461, n. 18, 91 S.Ct. 2022." (Original emphasis; footnotes omitted). *United States v. Martin,* 562 F2d 673, 677-78 (DC Cir 1977), *in which* evidence obtained by warrantless search of a suitcase was ordered suppressed. Omitted footnote 12 is instructive but lengthy.

[8] Intrusion of a container commonly used to carry private papers (such as lawyers' briefs) may well involve First/Fourteenth Amendment issues in addition to Fourth/Fourteenth Amendment law.

held valid under the federal constitution in *South Dakota v. Opperman,* 428 US 364 (1976).

LINDE, J., joins in this separate opinion.