Argued April 3, 1978, reversed February 27, 1979

STATE OF OREGON, *Respondent,*
*v.*
ARTHUR ROBERT DOWNES,
aka Lawrence Downes, *Petitioner.*
(No. 76-4039, CA 7366, SC 25654)

591 P2d 1352

Robert C. Cannon, Deputy Public Defender, Salem, argued the cause for petitioner. With him on the briefs was Gary D. Babcock, Public Defender, Salem.

John W. Burgess, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

Stephen Kanter, Portland, filed a brief amicus curiae in behalf of Oregon American Civil Liberties Union.

DENECKE, C. J.

**DENECKE, C. J.**

This is one of the four automobile search and seizure cases in which we granted petitions for review to attempt to clarify the law in this regard. *State v. Greene,* 30 Or App 1019, 568 P2d 716 (1977); *State v. Fondren,* 30 Or App 1045, 568 P2d 721 (1977); *State v. Groda,* 32 Or App 287, 573 P2d 1269 (1978).

The question raised in this case is whether an officer, without a warrant, can constitutionally search a closed container found in a vehicle which the officer had the right to stop, search and seize.

The motion to suppress was heard on stipulated facts. The defendant was suspected of manufacturing drugs. The defendant, while driving a converted school bus on a public highway, was validly stopped by officers. Inside the bus, in plain view, the officers saw property they knew was stolen and the officers, therefore, arrested defendant. The bus was driven by the officers or someone on their behalf back to a "towing" or "police" lot in Eugene, Oregon. Some time thereafter, probably while defendant was in jail, officers opened a closed, unlocked trunk found in the bus. Inside the truck was a cosmetic kit or flight kit. The officers opened this and inside was a bag which contained the drug.

Defendant was charged with criminal conspiracy to commit criminal activity in drugs. The trial court suppressed the use of the drugs found in the trunk in evidence. The state appealed, and the Court of Appeals reversed. *State v. Downes,* 31 Or App 419, 571 P2d 914 (1977).

At the hearing on the motion to suppress and in its brief before the Court of Appeals the state argued that the search was constitutionally permissible as an inventory search. *State v. Keller,* 265 Or 622, 510 P2d 568 (1973), held to the contrary. We there held that the police were not constitutionally authorized, in taking inventory of the contents of a rightfully impounded

[371]

vehicle, to open a closed fishing tackle box found in the vehicle. We observed that if the officers had probable cause to believe the tackle box contained contraband or evidence of a crime they should have applied for a search warrant. The search in the present case cannot be justified as an inventory search.

The state also argued, and the Court of Appeals concluded, that the search could be justified under the principle first stated in *Carroll v. United States,* 267 US 132, 45 S Ct 280, 69 L Ed 543, 39 ALR 790 (1925), and particularly as amplified in *Chambers v. Maroney,* 399 US 42, 90 S Ct 1975, 26 L Ed2d 419 (1970). *Carroll* held a vehicle could be searched without a warrant if the officers had probable cause to believe it had contraband or evidence of a crime and there were exigent circumstances which prevented the officer from first applying for a warrant. *Chambers* held whether there were exigent circumstances should be tested as of the time when the vehicle was seized, not later when it was in the police lot. *Chambers* upheld a search that included a search of a compartment under the dash.

On the basis of *Chambers,* the Court of Appeals was justified in deciding the search was valid. However, at about the same time that the Court of Appeals decided this case, the Supreme Court decided *United States v. Chadwick,* 433 US 1, 97 S Ct 2476, 53 L Ed2d 538 (1977), and made a distinction which *Chambers* did not foretell.

In *Chadwick,* narcotics agents had probable cause to believe a locked footlocker shipped to Boston by rail contained marijuana. The agents observed the defendant claim the footlocker in Boston and have it carried to the trunk of a waiting car. Before the car could be started or the trunk closed, the agents arrested defendant and the others with him. The agents took the footlocker to the Federal Building. About an hour and one-half after the footlocker was brought into the building the agents opened it and found marijuana. No warrant was obtained authorizing this search.

A majority of seven, in an opinion written by the Chief Justice, held that there being no exigent circumstances, the warrantless search could not be upheld. The government argued that the rationale of the automobile search cases demonstrates the validity of this search. The majority acknowledged that in the automobile search cases the Court sustained warrantless searches:

> " '[I]n cases in which the possibilities of the vehicle's being removed or evidence in it destroyed were remote, if not nonexistent.' * * *.
>
> "The answer [why the *Chadwick* case is not governed by the automobile search cases] lies in the diminished expectation of privacy which surrounds the automobile:
>
> "* * * * *.
>
> "The factors which diminish the privacy aspects of an automobile do not apply to respondent's footlocker. * * *." 433 US at 12-13.

The majority also held that the footlocker's mobility does not dispense with the warrant requirements because once the footlocker had been brought to the Federal Building, the locker or its contents could not have been removed.

The state has not suggested any distinction from *Chadwick* that we find persuasive. The expectation of privacy for the contents of the trunk in defendant's bus appears as great as Chadwick's expectation of privacy for the contents of the footlocker. The evidence in this case is not as clear or complete as it was in *Chadwick;* however, we believe the most reasonable inference is that after the bus was seized and later impounded in the lot in Eugene, the trunk and its contents were not apt to be removed by the defendant or anyone else except police officers.

In *Chadwick* the footlocker had been taken from the vehicle to the Federal Building, whereas here the trunk apparently was searched while it remained in the vehicle. That should make no difference, however, because the trunk or its contents could not be removed

[373]

by unauthorized persons after the bus was impounded. If the officers had any doubt it could be removed from the bus by unauthorized persons, the officers could have brought the trunk into the police station.

*Chambers* upheld the search of a car because the Court concluded exigent circumstances existed at the time of the initial seizure of the car. The inference from that holding is that it was not necessary that exigent circumstances exist when the search was subsequently actually made. *Chadwick* held that to constitutionally justify the search of a closed container found in the car, exigent circumstances must exist at the time the search is made. The inference from *Chadwick* is that this distinction is made because of the greater expectation of privacy of a closed container than of compartments of a car.

The decision of the Court of Appeals is reversed.