Argued and submitted January 30, affirmed May 17, 1989

## STATE OF OREGON,
*Respondent,*

*v.*

## JOSEPH TERRY SEIBOLD,
*Appellant.*

(87-02-30734; CA A49886)

773 P2d 789

George A. Haslett, Jr., Portland, argued the cause and filed the brief for appellant.

Vera Langer, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

**ROSSMAN, J.**

Defendant was convicted of theft in the first degree, ORS 164.055, and seeks reversal of that conviction on the ground that the trial court erred in denying his motion to suppress evidence seized from the trunk of his vehicle. We affirm.

Detective Peterson of the Multnomah County Sheriff's Office had been investigating a warehouse burglary and theft of approximately 500 video cassette recorders. A confidential informant told him that defendant had been involved in that burglary, that the stolen goods had been taken to defendant's address, that a truck rented from a location on SE 82nd Avenue in Clackamas County later was used to transport the property from defendant's address to an unknown location, that a truck stolen with the VCRs had been abandoned in Troutdale, that defendant owned a tan Ford LTD and that he was also known as Floyd Hook.

Peterson recovered the stolen truck, which had been hot-wired, at the location that the informant described and confirmed that a rental truck had been obtained from the location on SE 82nd. He and several other plain clothes officers then conducted a surveillance of defendant. They saw him drive away from his residence in a tan Ford LTD, purchase a police scanner from a Radio Shack store, then drive to a storage facility, where he parked his car in front of unit B-15 for about 20 minutes. One of the officers saw him go to the office of the facility, where he paid rent on unit B-15 in the name of Floyd Hook. Defendant drove back onto the freeway, and the police continued to follow. When his driving became "erratic," they became concerned that he had noticed the surveillance and might leave their jurisdiction. Peterson therefore radioed several uniformed Portland officers to stop defendant's vehicle. After stopping him, the uniformed officers took defendant into custody, citing him for driving while suspended.

Two of the investigating officers, Fisk and McGowan, arrived immediately and saw the police remove defendant from his car, search his vehicle and its trunk and remove ten stolen VCRs. McGowan testified that he did not know which officer opened the trunk. Peterson arrived shortly afterwards. Four hours later, defendant was arrested for theft. A search

warrant later was issued for defendant's storage unit, where the police found 291 recorders.

The trial court denied defendant's motion to suppress on the ground that the search was justified under the "automobile exception" to the warrant requirement. *See State v. Brown*, 301 Or 268, 274, 721 P2d 1357 (1986). Defendant, on the other hand, argues that the record establishes neither the identity nor the state of mind of the arresting officer who actually conducted the search. He thus contends that there was no proof that the officer who searched him had probable cause to do so and that the search therefore violated his Article I, section 9, and Fourth Amendment rights.

■ The "automobile exception" applies if (1) the automobile is mobile when stopped and (2) probable cause exists for searching it. *State v. Brown, supra,* 301 Or at 274. However, an officer searching a vehicle need not personally know all of the information necessary to establish probable cause. To have probable cause,

> "[he] personally must have information which constitutes probable cause, or [he] must be directed to make the search by an officer who personally has that knowledge. It is sufficient if the officer making the search on his own knowledge has secured the knowledge from another officer." *State v. Groda,* 285 Or 321, 324, 591 P2d 1354 (1979).

■ In this case, because part of the information that the informant had given Peterson had been corroborated before police began their surveillance, they had a substantial basis for believing that defendant had committed the burglary and theft. Given the totality of the circumstances, the shared knowledge of the investigative officers gave them probable cause to stop and search defendant, and they were entitled to enlist the aid of uniformed officers in making the stop. *See State v. Groda, supra,* 285 Or at 324; *see also State v. Mickelson,* 18 Or App 647, 650, 526 P2d 583, *rev den* (1974).

It is true that the record does not show which officer actually searched defendant and his automobile. However, there are only two possibilities. If McGowan or Fisk opened the trunk, the search was justified on the basis of their personal knowledge. *See State v. Groda, supra,* 285 Or at 324. If it was one of the uniformed officers, the search was nevertheless

valid. The evidence establishes that, in responding to Peterson's order, the officers stopped defendant and cited him for driving while suspended. After McGowan and Fisk arrived, defendant was searched, McGowan participating in the removal of stolen items from his trunk. A reasonable inference is that the uniformed officers made a traffic stop pursuant to Peterson's order, then searched defendant and his vehicle pursuant to directions from one of the other investigating officers. Nothing in the record indicates that the uniformed officers conducted the search on their own initiative.

Affirmed.