Submitted on record and briefs July 9,
reversed and remanded September 29, 1982

# STATE OF OREGON,
*Appellant,*

*v.*

# PAMELA RAE McCLARY,
*Respondent.*

(No. 80-21205, CA A23726)

651 P2d 145

Robert E. Barton, Assistant Attorney General, Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem, filed the brief for appellant.

No appearance by respondent.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

The state appeals a pretrial order of the district court suppressing evidence of the results of a breathalyzer test in a driving under the influence of intoxicants case. The accuracy of the particular Intoxilyzer used and the officer's qualifications to operate it are not challenged. The only issue is whether the officer properly conducted the test. We reverse and remand.

In administering the test, the officer followed all of the steps delineated in the "Intoxilyzer Operator's Check List," and he so marked the appropriate boxes on the list. The digital printout of the Intoxilyzer's analysis of a sample of defendant's breath showed a blood-alcohol reading of .17. In aid of an objection to the admission of the check list and the printout card, defense counsel — over the prosecutor's objection — asked the officer if he had checked the machine to determine whether the "error light" was working. The officer stated that the light had not come on, but that he had not checked the bulb to see whether it was working. Following counsels' arguments, the court ruled that the results of the breath test, as represented in the two exhibits, were inadmissible.

■ The trial court erred in suppressing the evidence. The record in this case shows the following: (1) the officer who administered the test had been trained in the operation of the Intoxilyzer and had received a "Permit for Breath Alcohol Analysis" from the Oregon State Health Division, *see* ORS 487.815(1) and (2)(e) *(amended by* Or Laws 1979, ch 410, § 8; Or Laws 1981, ch 806, § 6);[1] (2) the

---

[1] Defendant's breath test was administered July 19, 1980. The officer's permit to operate the Intoxilyzer is dated October 20, 1978. At that time, ORS 487.815(1) and (2)(e) provided as follows:

"(1) Chemical analyses of the person's *breath,* blood, urine or saliva, to be valid under ORS 487.545, shall be performed according to methods approved by the Health Division and by an individual possessing a valid permit to perform such analyses issued by the Health Division.

"(2) The Health Division shall:

"* * * * *

"(e) Issue permits to individuals according to their qualifications. Permits shall be issued to police officers only upon satisfactory completion of the prescribed training course and written examination and the permit shall state

Intoxilyzer used had been tested and certified "accurate" at intervals of not more than 60 days, as required by ORS 487.815(3)(c)[2] *(amended by* Or Laws 1981, ch 307, § 1); (3) the officer followed the procedure for administering the Intoxilyzer test established by OAR 257-30-020(1) and set out in the "Intoxilyzer Operator's Check List." Where breath test results are obtained by a qualified operator from

the methods and equipment which the police officer is qualified to use. Permits shall be subject to termination or revocation at the discretion of the Health Division." (Emphasis added.)

ORS 487.815 was amended by Or Laws 1979, ch 410, § 8, to provide, *inter alia,* that:

"(1) Chemical analyses of the person's *breath,* blood, urine or saliva, to be valid under ORS 487.545, shall be performed according to methods approved by the Health Division *or the Department of State Police* and by an individual possessing a valid permit to perform such analyses issued by the Health Division *or the Department of State Police.*

"(2) The Health Division shall:

"(a) Approve techniques or methods of performing chemical analyses that are satisfactory for determining alcoholic content of a person's blood, urine or saliva.

"* * * * *

"(3) *The Department of State Police shall:*

"(a) *Approve techniques or methods of performing chemical analyses of a person's breath.*

"* * * * *

"(e) *Issue permits* to individuals according to their qualifications. Permits shall be issued to police officers only upon satisfactory completion of the prescribed training course and written examination and the permit shall state the methods and equipment which the police officer is qualified to use. Permits shall be subject to termination or revocation at the discretion of the Department of State Police." (Emphasis added.)

Or Laws 1981, ch 806, § 6 amended ORS 487.815(1) to delete the reference to "saliva." *See also* n 2, *infra.*

As previously discussed, defendant has not challenged the officer's qualifications to operate the Intoxilyzer. We note also that Or Laws 1981, ch 307, § 2, provides that:

"The Health Division permits for alcohol breath analysis issued prior to July 18, 1979, shall not be deemed invalid solely because of the duty to issue such permits being assigned to the Department of State Police by section 8, chapter 410, Or Laws 1979."

[2] ORS 487.815(3)(c) was amended by Or Laws 1981, ch 307, § 1, and now provides that the testing and certification be conducted "at intervals of not more than *90* days." (Emphasis added.)

a machine certified as accurate after all steps and procedures mandated by statute and administrative rules have been properly performed, the results cannot be excluded from evidence simply because the operator neglected to perform some additional unrequired function.[3]

■     It is not enough for defendant to say that the checking of the error light might have been desirable as an additional means of assuring the accuracy of breath test results. When the question is one of admissibility, the court need look only to those procedures that are mandated. *See State v. Kacalek,* 34 Or App 967, 580 P2d 205 (1978); *State v. Hanson,* 19 Or App. 498, 528 P2d 100 (1974), *rev den* (1975).[4]

Reversed and remanded for trial.

---

[3] Neither the "Intoxilyzer Operator's Check List" nor the applicable administrative rules express a requirement that the operator of the Intoxilyzer determine whether the "error light" bulb of the machine is, in fact, working. Step "C" of the "Check List" contains the following reference to the light:

"After the Air Pump automatically shut off, the operator turned the Mode Selector to the 'Zero Set' mode. The operator then depressed and rotated the Zero Adjust knob so that the Digital Display read .000 to .003. If the displayed number was a flashing or minus .000, the operator depressed and rotated the knob clockwise until it stopped flashing or the minus sign disappeared, and the zero setting was a non-flashing or non-minus .000, .001, .002, or .003. If an unacceptable zero setting is made, the Error light will glow when the Mode Selector is turned to any of the test modes, and a printout will not occur."

[4] In *State v. Hanson,* 19 Or App 498, 528 P2d 100 (1974), *rev den* (1975), the defendant claimed that the breathalyzer results should have been suppressed because the operator had failed to "make certain" that defendant had not ingested anything, vomited, or regurgitated before taking the test. We stated that, although compliance with approved administration procedures

"* * * should obviously be a prerequisite to the admission of evidence which will typically be a decisive factor in a trial on a charge of driving while under the influence * * *, such compliance will normally be presumed upon the presentation by the state of a prima facie case. In order to prevail, a defendant must introduce into the record facts which, if true, demonstrate that the 'official duty' — the administering of the breathalyzer test — has not been 'regularly done.' *See* ORS 41.360(15)." 19 Or App at 501-02.

We then noted that the approved methods set out by the Health Division did not require an operator to "make certain" that a defendant had not coughed during the observation period; we therefore rejected his claim. 19 Or App at 503-04.

Similarly, in *State v. Kacalek,* 34 Or App 967, 580 P2d 205 (1978), we rejected the assertion that the breathalyzer operator was required to "make certain" a defendant had not ingested, vomited, or regurgitated any substances by examining the inside of his mouth, citing *State v. Hanson, supra.*