Argued and submitted August 25, 1986, affirmed January 14, 1987

# STATE OF OREGON,
*Appellant,*

*v.*

# DONALD GENE McVAY,
*Respondent.*

(86-7032; CA A39293)

731 P2d 466

Carol Munson, Assistant Attorney General, Salem, argued the cause for appellant. With her on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

John H. Tuthill, Tillamook, argued the cause and filed the brief for respondent.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

YOUNG, J.

Van Hoomissen, J., dissenting.

## YOUNG, J.

The state appeals from a pretrial order suppressing evidence of the results of an Intoxilyzer test, because the test operator failed to observe defendant during the 15-minute pre-test period and there was no factual basis to enable the operator to "make certain" that the pre-test requirements had been met. We affirm.

Officer Nafziger arrested defendant for driving under the influence of intoxicants. He took defendant to jail, where there was an Intoxilyzer for breath testing purposes. Nafziger did not have his operator's checklist with him, and he asked the jailer to observe defendant while he left to get the proper form. The jailer was not a certified operator of the Intoxilyzer. Nafziger returned after 10 or 15 minutes and asked the jailer only whether defendant had put anything in his mouth, and the jailer said, "No." The jailer testified that he conducted the 15-minute observation of defendant, knowing the purpose of the observation, and that defendant did not take anything by mouth, regurgitate or vomit. Nafziger testified that he is a certified Intoxilyzer operator and that he administered the test to defendant and completed the checklist in a proper fashion. He relied on information from the jailer to complete the pre-test observation requirement.

The state contends that OAR 257-30-020(1)(b) (promulgated pursuant to ORS 813.160) does not mandate that the test operator be the person to conduct the observation. That rule provides:

> "*The operator must make certain* the subject has not taken anything by mouth, (drinking, smoking, eating, taking medication, etc.), vomited, or regurgitated liquid from his stomach into his mouth, for at least 15 minutes before taking the test." (Emphasis supplied.)

Defendant contends that the rule does not allow the operator to delegate the responsibility to a third person, especially when that person is not a certified operator. We disagree.

In order for a breath test to be valid, it must be administered pursuant to ORS 813.160(1)(b), which provides in part:

> "Chemical analyses of a person's breath shall be performed by an individual possessing a valid permit to perform such

analyses issued by the Department of State Police and shall be performed according to the methods approved by the Department of State Police."

OAR 257-30-025(1), governs the qualifications for breath test equipment operators:

"No individual shall operate approved breath testing equipment to determine the alcohol content of the blood of a person * * * unless the individual has been issued a permit to operate such equipment by the * * * Oregon State Police on or after July 18, 1979."

The purpose of that requirement is to ensure the skills necessary to operate the breath testing equipment. We find nothing in the regulations, nor is there any evidence that supports the position, that there is any special skill required to observe a person to ensure that he did not take anything by mouth, vomit or regurgitate.[1]

Defendant next contends that, even if the operator can delegate the responsibility of a part of the testing procedure to a non-certified third party, there was an insufficient factual basis for the operator to be certain that the pre-test requirements had been met. We agree. When the question is one of admissibility, the court must look to the procedures that are mandated. *See State v. McClary,* 59 Or App 553, 557, 651 P2d 145 (1982). When Nafziger returned to the jail with the checklist, the only question that he asked the jailer was whether defendant had taken anything by mouth. He failed to inquire whether defendant had vomited or regurgitated. Although an operator may rely on information provided by

---

[1] The Department of State Police has formulated an "Intoxilyzer Operator's Check List" pursuant to OAR 257-30-020, which begins by providing blank spaces for the names of the operator and the subject, the date, and the agency. It then provides:

"Pre-test Requirement:

"The operator is certain that the subject has not taken anything by mouth (drinking, smoking, eating, taking medications, etc.), vomited, or regurgitated liquid from his stomach into his mouth, for at least fifteen minutes before taking the test.

"Observed by _____."

That is followed by an eight-step checklist labelled "TEST PROCEDURE." The steps deal with the actual operation of the testing equipment, and at the end there is a space for "Operator's Signature." Had the Department intended that the operator and the pre-test observer be the same person, there would be no need for the space labeled "observed by."

another officer delegated to observe, the operator must nevertheless "make certain" that the ingestion, vomiting and regurgitation requirements are met before administering the test. OAR 257-30-020(1)(b). At a minimum, that requires that that information be communicated to him. On that ground, we affirm.

Affirmed.

**VAN HOOMISSEN, J.,** dissenting.

I disagree with majority's conclusion that "there was an insufficient factual basis for Nafziger' to be certain that the pre-test requirements had been met." On these facts, I would hold that there was substantial compliance with the rule and that that is enough. Therefore, I respectfully dissent.

Not only does defendant make no contention that he in fact vomited or regurgitated, but it clearly appears in the record that he did not do so. Further, he has never challenged the accuracy of the test result.

Huntsman, the observer, testified that, knowing the purpose of his observation, he had observed defendant for 15 minutes. Huntsman knew what he was looking for—he had observed hundreds of DUII arrestees on prior occasions. In this context, a reasonable interpretation of the question that Nafziger put to Huntsman would be "Did you observe defendant for fifteen minutes and did he do anything that would invalidate the test?" A reasonable interpretation of Huntsman's response would be "I did observe him, and he didn't do anything that would invalidate the test."[1]

The proper test to apply here is one of substantial compliance. *See State v. Allen,* 74 Or App 275, 702 P2d 1118, *rev den* 300 Or 111 (1985); *State v. McClary,* 59 Or App 553, 651 P2d 145 (1982); *State v. Zipf,* 54 Or App 305, 634 P2d 495 (1981); *State v. Kacalek,* 34 Or App 967, 580 P2d 205 (1978); *State v. Hanson,* 19 Or App 498, 528 P2d 100 (1974), *rev den* (1975). Nafziger substantially complied with the rule. His

---

[1] An analogy might be drawn here between the collective information of two officers conducting an investigation that adds up to probable cause, *see State v. Groda,* 285 Or 321, 591 P2d 1354 (1979); *State v. Mickelson,* 18 Or App 647, 526 P2d 583, *rev den* (1974), and the collective information of Nafziger and Huntsman that adds up to a satisfactory pre-test observation.

slight deviation in no way prejudiced defendant's rights or compromised the validity of the test. There is no reason to believe and, indeed, defendant does not claim, that he would have done anything differently had Nafziger also asked Huntsman, "Did defendant vomit or regurgitate?" Had Nafziger asked that question, defendant still would have taken the breath-test, and the test result still would have been the same.

The majority's hyper-technical application of the rule in this case reaches an absurd result that elevates form over substance. If the literal interpretation of a rule produces an absurd or unreasonable result, the rule must be construed so that it is reasonable and workable. *See State v. Irving,* 268 Or 204, 206, 520 P2d 354 (1974). We should not condone the suppression of highly relevant evidence on a technicality where no prejudice is even claimed, much less shown.[2]

---

[2] I agree with the majority's conclusion that Nafziger could delegate the responsibility.