Argued and submitted November 19, 1997; resubmitted In Banc January 13, reversed and remanded February 25, 1998

# STATE OF OREGON,
*Appellant,*

*v.*

# RICKEY D. TYNON,
*Respondent.*

## (96-823-C; CA A95383)

955 P2d 250

Rolf C. Moan, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Clayton C. Patrick argued the cause and filed the brief for respondent.

EDMONDS, J.

Warren, J., dissenting.

**EDMONDS, J.**

This case is an appeal by the state because the trial court excluded evidence of an Intoxilyzer test result in a prosecution for driving while under the influence after the trial court ruled that the pretest observation period, as required by OAR 257-030-0070(2)(a),[1] was not met. We reverse.

At the hearing on the motion to exclude evidence of the Intoxilyzer test result, Officer Bigman, the operator of the test, and Officer Lenhardt, who observed the administration of the test, testified. Bigman said that he inspected defendant's mouth at 10:20 p.m. and that it showed no indication that defendant had vomited, regurgitated or was ingesting anything at that time. Bigman remained in the room with defendant until 10:55 p.m. when he left for "approximately two to three minutes" to take a telephone call. Before he left, he instructed Lenhardt to "watch the defendant." Lenhardt testified that he was familiar with the pretest observation requirement embodied by the rule and understood the procedure that was occurring. Bigman testified that when he returned to the room, Lenhardt "did not tell me anything." He said that he understood Lenhardt's silence on his return to mean "that [defendant] did not move, he did not vomit, puke, did not do anything. Officer Lenhardt would have told me if he even coughed." Bigman rechecked defendant's mouth at 11:02 p.m., and again, there was no indication of anything that would implicate the rule. "Shortly thereafter," he administered the Intoxilyzer test. Lenhardt, who had been with defendant when the observation period began at 10:20 p.m. and had stayed with him during the entire time, testified that defendant did not regurgitate, vomit or ingest anything during the observation period. The

---

[1] OAR 257-030-0070(2)(a) provides, in part:

"(2) Pre-test Requirement:

"(a) The operator is certain that the subject has not taken anything by mouth (drinking, smoking, eating, taking medication, etc.), vomited, or regurgitated liquid from the stomach into mouth, for at least fifteen minutes before taking the test;

"(b) There is no requirement that the operator be the person who makes observation of the subject."

officers' testimony is uncontroverted. Defendant did not testify, and he presented no evidence that any act on his part occurred that would have implicated section 2 (a) of the rule or affected the test result.

The trial court ruled:

"The pre-test observation requirement under OAR 257-30-070 was not met in this case in that the operator of the [I]ntoxilyzer (the arresting officer) could not have been 'certain' that the prohibited activities (*e.g.*-regurgitation) did not take place during the 15 minutes before administration of the test."

It explained that, "The two officers did not communicate with each other about what to watch for while the arresting officer was out of the room, nor did they discuss what had occurred when the arresting officer returned to the room."

■ Our standard of review regarding a trial court's ruling on whether the state complies with the pretest requirements for an Intoxilyzer test focuses on a question of fact and a question of law that afford meaning to the rule. *See State v. Balderson*, 138 Or App 531, 534, 910 P2d 1138, *rev allowed* 324 Or 305 (1996) (interpreting the "operator must make certain" language of *former* OAR 257-30-020(1)(b) which also required a 15-minute pretest observation period).[2] First, the rule requires that the operator of the test form a subjective belief to the degree of "certainty" that the test subject has not engaged in any of the acts described by the rule. Second, that belief must be reasonable under the circumstances. *Id.* at 536.

---

[2] In *State v. Balderson*, 138 Or App 531, 534, 910 P2d 1138, *rev allowed* 324 Or 305 (1996), the defendant testified that she had inaudibly regurgitated during the observation period. Despite that testimony, the trial court denied the defendant's motion to suppress the results of the test because the test operator had made an objectively reasonable effort to "make certain" that she had not regurgitated. We affirmed the trial court, holding that the rule focused not on whether *in fact* the subject took anything by mouth, vomited or regurgitated, but "on the *conduct of the officer.*" (Emphasis in original.) In that case, the issue was whether the rule required merely that the officer be "certain" that none of the enumerated events had occurred or whether the rule required that in fact, the events had not occurred. Similarly, the issue in this case focuses on the state of mind or belief that Bigman held.

 Also, the rule expressly contemplates that the operator may rely on the observation of someone else in reaching that required subjective belief. OAR 257-030-0070(2)(b); *see also State v. McVay*, 83 Or App 312, 315, 731 P2d 466 (1987) (interpreting *former* OAR 257-030-020(1)(b), that required that "[t]he test operator must make certain"); *see also State v. Herring*, 112 Or App 83, 85-86, 827 P2d 932 (1992) (holding that the former rule had been complied with when the test operator asked the observer whether the defendant "had done anything?"). However, the text of the rule does not require express communications between the observer and the test operator about what occurred during the absence of the operator, and it is not difficult to think of situations where silence is as effective a communication as oral statements, particularly in situations where procedures and roles are commonly understood by those involved in the administration of the test.[3] Thus, whether "certainty" is reasonable under the circumstances must be tested by all the circumstances of which the operator was aware at the time that the operator formed the belief that the requirements of the rule had been met.

██ In this case, the trial court ruling does not express a finding about the subjective component of the rule.[4] It did not hold that the operator "was not certain" that the requirements had been met. Rather, it held that the operator "could not have been certain" because the officers did not expressly communicate with each other about the requirements of the rule. That seems to us to be a legal conclusion, *i.e.*, that the rule requires an oral communication between the test operator and the observer and that the operator could not be "certain" that the requirements of the rule had been met in the

---

[3] Contrary to the assertion of the dissent, we did not hold in *State v. McVay*, 83 Or App 312, 315, 731 P2d 466 (1987), that the rule contemplates only express oral communications. In response to the defendant's contention in that case that there was an insufficient factual basis for the operator to be certain, we noted that the test operator failed to inquire whether the defendant had vomited or regurgitated. Under those circumstances, the operator could not have been certain that *all* the requirements of the pretest observation period had been met. We said, "At a minimum, that requires that that information be communicated to him." *Id.* at 316. Our holding said nothing about the form in which the communication must occur.

[4] Our opinion in *Balderson* issued on January 24, 1996. In this case, the trial court heard argument on October 4, 1996, and rendered its formal order on October 29, 1996.

absence of such a communication. Such an interpretation would write a requirement into the rule that is not expressed by the text of the rule and suggests that the trial court did not correctly understand the import of the rule.

Accordingly, we remand to the trial court. In the event that the trial court finds that Bigman held the requisite subjective belief, it must then determine whether his belief was reasonable under the circumstances. Although the facts that Bigman did not tell Lenhardt what to watch for while Bigman was out of the room, and that Lenhardt did not expressly tell Bigman that nothing of significance had occurred in his absence, comment on the reasonableness of Bigman's belief, they are not necessarily dispositive. An inquiry about "reasonableness" requires consideration of the totality of the circumstances that were presented to Bigman, including the evidence that Bigman told Lenhardt to "watch the defendant" during his absence, that Lenhardt testified that he was "familiar with the pre-[I]ntoxilyzer test requirement of the observation period," and that Bigman understood Lenhardt's silence to mean "that the defendant * * * hadn't done anything " and "Officer Lenhardt would have told me if he had even coughed."

■ Additionally, evidence offered by the state can arise to the level of a *prima facie* showing that compliance occurred. In that event, it is incumbent on a defendant to overcome that showing by offering evidence that the rule's requirements were not met. *State v. Demings,* 116 Or App 394, 397, 841 P2d 660 (1992), *rev den* 315 Or 443 (1993). We cannot determine from the trial court's order whether the trial court considered that rule of law. On remand, the trial court must determine, by applying the above rules, whether Bigman held a subjective belief of certainty about whether defendant had taken anything by mouth, vomited or regurgitated during the observation period and whether that belief was reasonable.

The state also urges that Oregon Laws 1997, chapter 313, section 1, requires the admission of the evidence.[5] We do

---

[5] After the trial court ruled, Oregon Laws 1997, chapter 313, became effective on June 12, 1997.

not reach that issue because it is not necessary to the resolution of the issue before us.

Reversed and remanded.

**WARREN, J.,** dissenting.

The majority fails to follow the express holding of a previous case that controls the issues that it discusses. Under that case, Officer Bigman failed to comply with the applicable rule when he administered the breath test to defendant, and the evidence is not admissible; there are no further findings for the trial court to make. For that reason, I dissent from the majority's decision to remand the case. The state's alternative argument, that under ORS 136.432 the evidence of the breath test is admissible despite the violation of the rule, is also unavailing. We should affirm the trial court's decision.

What happened in this case is undisputed. Bigman examined defendant's mouth at 10:20 p.m. and saw no sign that he had vomited or regurgitated or was ingesting anything at the time. Bigman then observed defendant until 10:55 p.m., when he left for a few minutes to take a telephone call. He asked Officer Lenhardt to watch defendant while he was gone. When Bigman returned, he did not ask Lenhardt what had happened or otherwise talk with him. There is no evidence that either made any gestures toward the other. Bigman then administered the test, fewer than 15 minutes after returning.

The question is whether those facts would support a conclusion that Bigman complied with OAR 275-030-070(2), one of the rules for administering a breath test, which required *Bigman* to *be certain* that defendant had not taken anything by mouth, vomited, or regurgitated liquid from the stomach for at least 15 minutes before taking the test. In *State v. McVay*, 83 Or App 312, 731 P2d 466 (1987), we held, under an earlier version of this requirement, that the testing officer had not *made certain* that the defendant had not done any of those things. *See former* OAR 257-30-020(1)(b). In *McVay*, the arresting officer took the defendant to the jail in order to administer the test. During the 15-minute observation period, he left to get the proper form, asking a jailer to observe the defendant while he was gone. On returning, he

asked the jailer whether the defendant had put anything in his mouth; the jailer answered "No." We held that it was proper for the officer to rely on a third person for part of the observation and that it was irrelevant that the jailer was not himself certified to operate the equipment. 83 Or App at 314-15. However, there had to be a sufficient factual basis for the officer "to *be* certain that the pre-test requirements had been met." *Id.* at 315 (emphasis supplied). Because the officer failed to ask whether the defendant had vomited or regurgitated, that factual basis was missing and the results of the test were inadmissible under ORS 813.160(1)(b).

> "Although an operator may rely on information provided by another officer delegated to observe, the operator must nevertheless 'make certain' that the ingestion, vomiting and regurgitation requirements are met before administering the test. * * * *At a minimum, that requires that the information be communicated to him.*" Id. at 315-16 (emphasis supplied).

We have clarified aspects of *McVay* in later cases, while retaining intact its essential holding that the testing officer must communicate with the nontesting observer at the time of the test. *See, e.g., Gildroy v. MVD,* 100 Or App 538, 786 P2d 757, *mod on other grounds* 102 Or App 138, 793 P2d 332 (1990), *aff'd* 315 Or App 617, 848 P2d 96 (1993) (testing officer may communicate with observer after test, while filling out checklist); *State v. Herring,* 112 Or App 83, 827 P2d 932 (1992) (observer's negative answer when the testing officer asked him if the defendant had done anything was sufficient). Those cases, like *McVay,* require an express oral communication.

The crucial point in our cases is that the testing officer must communicate with the observer about the driver's actions before or immediately after administering the test. If the officer does not do that, as a matter of law the officer has not made certain that the requirements of the rule are met. Until now, our cases have not permitted silence to substitute for an inquiry. The state argues, and the majority apparently accepts, that the change from the requirement in *former* OAR 257-30-020(1)(b) that the officer *make certain* that the driver has satisfied the criteria to the requirement in the present rule that the officer *is certain* has some impact on this issue.

That argument is incorrect. In *McVay*, we described what the officer had to do in order to satisfy the objective test of the former rule. We focused on whether the officer's actions were sufficient to allow us to be satisfied that the officer had complied. In our discussion, we used the phrase "be certain" interchangeably with "make certain"; what mattered was the nature of the evidence, not the objectivity or subjectivity of the test.

Although the current rule may be seen to state a subjective test, we must still determine whether the officer's subjective belief is reasonable. *See* 152 Or App at 696. The actions that we held essential in *McVay* remain essential under the current rule; evidence that is objectively insufficient to support a conclusion is necessarily insufficient to support a reasonable belief in that conclusion. Our holding in *McVay* was that an express oral communication is essential for the officer to make certain that the officer has complied with the rule.[1] Because that holding remains controlling, as a matter of law Bigman could not have been certain that he had complied with the rule. It was insufficient for him to rely on Lenhardt's silence in the absence of some earlier communicated understanding between the officers. The majority's assertion that there may be "situations where silence is as effective a communication as oral statements," 152 Or App at 697, is directly contrary to our holding in *McVay*,[2] a holding that the change in the rule does not affect.[3]

Because I conclude that the trial court correctly held that Bigman failed to comply with OAR 257-030-070(2), I

---

[1] None of our cases, including this one, involves an express agreement, made before the observation, that the observer will speak *only* if something described in the rule occurs. I do not need to consider the extent to which silence may be a communication in *that* circumstance, but I would not foreclose the possibility.

[2] That assertion is also wrong. For example, in this case Lenhardt's silence may have meant that he had not seen any problems; it may also have meant, however, that he was waiting for Bigman to ask him if anything had happened. At least in the absence of a previous agreement between the officers, that silence was not as effective a communication as an oral statement would have been.

[3] The majority suggests that *State v. Balderson*, 138 Or App 531, 910 P2d 1138, *rev allowed* 324 Or 305 (1996), in which the driver asserted that she had inaudibly regurgitated during the observation period, is relevant on this point. It is not. Whether the officer observed the driver with sufficient attention is a different issue from whether one officer reasonably relied on another officer's uncommunicated observations.

must consider the state's alternative argument that ORS 136.432 makes the evidence admissible. That statute provides:

"A court may not exclude *relevant and otherwise admissible* evidence in a criminal action on the grounds that it was obtained in violation of any statutory provision unless exclusion is required by:

"(1) The United States Constitution or the Oregon Constitution;

"(2) The rules of evidence governing privileges and the admission of hearsay;

"(3) The rights of the press." (Emphasis supplied.)

According to the state, the only ground for excluding evidence of the test in this case is a violation of a rule, and ORS 136.432 therefore requires that the evidence be admitted.

The state ignores an essential element of the statute: its provisions apply only to evidence that is "relevant and otherwise admissible." The rules adopted under ORS 813.160(1)(b) are not simply guidance for the police to follow in collecting admissible evidence. Rather, they are a legislative and administrative determination of when a breath test is sufficiently reliable that a court may consider it, they thus determine when evidence of a breath test is admissible. A violation of the rules means that the results of the test are not sufficiently reliable to satisfy the foundational requirement for admissibility. If scientific evidence, such as evidence of a breath test, is not reliable, it is not relevant and therefore is not admissible. *See* OEC 402; 1 Strong, ed., *McCormick on Evidence* 868 (4th ed 1987).

That the purpose of OAR 257-030-070(2) is to determine when the evidence is admissible is clear from the statutes that gives the rules its authority. ORS 813.300 provides for the admission of a breath test in evidence in any civil or criminal action "arising out of the acts committed by a person driving a motor vehicle while the person is under the influence of intoxicants[.]" That statute provides the authority for a court to admit such a test in evidence. *See State v. Balderson*, 138 Or App 531, 910 P2d 1138, *rev allowed* 324 Or 305 (1996). ORS 183.160(1) then establishes the requirements for

a test to "be valid under ORS 813.300"; those requirements include complying with the relevant rules. In *Balderson*, we held that compliance with the rules that the State Police adopt pursuant to the legislature's delegate authority determines whether breath test evidence is admissible.[4] The issue in this case, thus, is not whether Bigman violated a rule or a statute in obtaining evidence that would otherwise be admissible.[5] Rather, the issue is whether Bigman complied with the requirements for that evidence to be admissible in the first place. Because he did not, the evidence was not "relevant and otherwise admissible," and ORS 136.432 does not affect the trial court's conclusion that the officer's failure to comply with the rule required exclusion.

There is nothing in the record of this case that explains the scientific basis for a breath test, how the specific machine that Bigman used applies those scientific principles, or the procedures that are necessary to make a test on that machine reliable. Thus, the *sole* basis on which evidence of the breath test can be admissible is ORS 813.160(1)(b), because that statute makes such evidence unnecessary *if* the officer follows the rules that the State Police adopted. Indeed, the statute suggests that compliance with those rules is the *only* basis for admitting evidence of a breath test. Failure to comply with the statutes and rules, thus, means that the test has not met the legislative criteria for admissibility.

The purpose of the specific regulation involved in this case, requiring the officer to be certain that the person has not taken anything by mouth, vomited, or regurgitated in the 15 minutes immediately preceding the test, is to ensure that the test is reliable by excluding the possibility of contamination of the breath sample. A similar requirement would be

---

[4] Both the plurality opinion and the dissent, which together had the support of seven members of the court, took this position. *Balderson*, 138 Or App at 535 and n 1 (plurality); 138 Or App at 548-49 (Haselton, J., dissenting). The concurrence, which had the support of two judges, would have held that the rules regulate only the conduct of the officer, not the admissibility of the evidence in court. 138 Or App at 543-45 (Edmonds, J., concurring).

[5] Indeed, the record does not suggest that Bigman *obtained* the evidence in violation of a rule. So far as the record shows, he followed all of the provisions of the implied consent law, and defendant agreed to give the sample. The question, rather, is whether the evidence that Bigman properly obtained is sufficiently reliable to be admissible.

essential for admissibility in the absence of a statute. The trial court, thus, did not exclude evidence that was otherwise admissible; it determined that the evidence did not meet the requirements of reliability that the legislature has made the foundation for admissibility.

The statutes and rules governing the conduct of tests that determine a person's blood alcohol content by examining the person's breath, thus, are not exclusionary rules that may be subject to ORS 136.432. Rather, they are rules of admissibility. The trial court did not err when it applied those rules to hold that the evidence in this case is not admissible.[6] We should affirm its decision. I dissent from the majority's decision not to do so.

---

[6] The text and context of the statutes are sufficiently clear that we do not need to consider legislative history. In any event, the only relevant history that either side has located refers to *blood* tests, not breath tests, and does not apply to this case.