[No. G031100. Fourth Dist., Div. Three. Dec. 10, 2003.]

RICHARD VIGIL HERNANDEZ, Plaintiff and Respondent, v. CHON GUTIERREZ, as Director, etc., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II, C.

COUNSEL

Bill Lockyer, Attorney General, Dennis W. Dawson and Patti W. Ranger, Deputy Attorneys General, for Defendant and Appellant.

Law Offices of Barry T. Simons and Barry T. Simons for Plaintiff and Respondent.

OPINION

**ARONSON, J.**—The Department of Motor Vehicles (DMV) challenges a judgment granting a writ of mandate overturning its suspension of Richard Vigil Hernandez's driver's license. Because the peace officer who observed Hernandez for the requisite period prior to a breath-alcohol test was not a certified intoxilyzer operator, the trial court concluded the test results were inadmissible at the license suspension hearing. ██ We hold the results were admissible under the official duty presumption. (Evid. Code, § 664.) As we discuss below in the published portion of this opinion, the regulatory requirement that a breath test subject not regurgitate, vomit, eat, smoke, or ingest alcohol or any other fluid for at least 15 minutes before the collection of a breath sample (Cal. Code Regs., tit. 17, § 1219.3)[1] does not require the officer *observing* the subject, as opposed to the person who eventually *administers* the breath test, to be certified in the use of the breath test device. In the unpublished section of the opinion, we conclude the regulation does not require the observing officer to maintain uninterrupted *visual* contact with the subject in order to satisfy section 1219.3's "continuous observation" requirement. We therefore reverse and remand for the trial court to enter a new and different judgment denying Hernandez's writ petition.

I

FACTS AND PROCEDURAL BACKGROUND

On May 11, 2001, around 9:15 p.m., Huntington Beach Police Officer David Roberts responded to a report of a reckless driver in a red Corvette on

---

[1] All further regulatory references are to this title.

Pacific Coast Highway. Roberts located the Corvette and observed it swerving and nearly striking the center median. Roberts stopped the car. The driver, Hernandez, had bloodshot, watery eyes, and a flushed face. An odor of alcohol emanated from inside the Corvette. Asked to step out of the car, Hernandez walked with an unsteady gait and his speech was slurred. He told Roberts he had consumed two 12-ounce beers between 6:30 p.m. and 9:10 p.m. Hernandez failed a series of field sobriety tests, and was placed under arrest.

At the police station, Hernandez chose to take a breath test. Before the test, Roberts kept Hernandez under observation for 21 minutes. Roberts stood just outside the holding cell. Occasionally, Roberts glanced down to complete some paperwork while Hernandez remained in the cell, some five feet away. Roberts did not see, hear, or smell Hernandez eat, drink, smoke, belch, burp, regurgitate, or vomit. Jail detention officer Backstrom joined Roberts in observing Hernandez the last six minutes before the breath test. Backstrom, a certified intoxilyzer operator, administered the breath test. Before doing so, he asked Hernandez if he had vomited, regurgitated, belched, or burped, and Hernandez said "no." The breath test revealed a blood-alcohol concentration of .13 percent at 10:09 p.m. and .12 percent at 10:11 p.m. Roberts issued Hernandez notice his license would be suspended in 30 days for driving with a blood-alcohol concentration greater than .08 percent. (Veh. Code, § 13353.2.)

Hernandez called Roberts to testify at the ensuing license suspension hearing. Roberts admitted he was not certified to operate the intoxilyzer device used to determine Hernandez's blood-alcohol concentration. DMV introduced the breath test results, which were recorded on an "Information & Precautionary Checklist" form used by Roberts and Backstrom at the time of the test.

The form included the following language: "OBSERVATION [¶] Subject must be under continuous observation from at least 15 minutes prior to the first breath sample until the final breath sample is collected. During this time, he/she must not drink any alcoholic beverage or other fluid, eat, or smoke anything and must not vomit, regurgitate, belch or burp. If any of the above occurs, the test must be discontinued and the observation restarted or the subject must choose another chemical test." Below this language was the heading, "OFFICER'S STATEMENT (If Officer is not Operator)" and Roberts's signed statement he "observed the above listed subject from 2150 [hours] until 2211 [hours]. During that time, he/she did not drink any alcoholic beverage or other fluid, eat or smoke anything, nor did he/she vomit, regurgitate, belch, or burp." Backstrom's signed "OPERATOR'S STATEMENT" was identical, except he observed Hernandez from 10:05 p.m. to 10:11 p.m.

Hernandez objected to the breath test results on the grounds Roberts was not qualified to conduct the observation period. The hearing officer admitted the results because Backstrom, not Roberts, administered the breath test. Since the evidence showed Hernandez's blood alcohol concentration exceeded .08 percent, the hearing officer suspended his license and, upon internal review, DMV concurred with this decision. The trial court subsequently granted Hernandez's petition for a writ of mandamus to set aside the suspension, and DMV now appeals.

## II

## DISCUSSION

**(2)** Title 17 establishes the procedures for determining "the concentration of ethyl alcohol in samples of blood, breath, urine, or tissue of persons involved in traffic accidents or traffic violations." (§ 1215.1(b).) Law enforcement officials conducting breath tests must adhere to title 17. (Health & Saf. Code, § 100715.) Breath test results are admissible in license suspension and revocation proceedings "upon a showing of *either* compliance with title 17 *or* the foundational elements of (1) properly functioning equipment, (2) a properly administered test, and (3) a qualified operator . . . ." (*People v. Williams* (2002) 28 Cal.4th 408, 417 [21 Cal.Rptr.2d 854, 49 P.3d 203], italics added.) When DMV proceeds by the former route, as here, it enjoys the benefit of the official duty presumption under Evidence Code section 664. That section "creates a rebuttable presumption that blood-alcohol test results recorded on official forms were obtained by following the regulations and guidelines of title 17. [Citations.] . . . The recorded test results are presumptively valid and the DMV is not required to present additional foundational evidence." (*Shannon v. Gourley* (2002) 103 Cal.App.4th 60, 64–65 [26 Cal.Rptr.2d 327].)

The question presented by this appeal is whether Hernandez rebutted the presumption of compliance with title 17. The trial court concluded Hernandez did so by showing Roberts was not a certified breath test instrument operator. Whether title 17 requires a certified operator to observe the subject before administering a breath test is a question of regulatory interpretation. " 'The interpretation of a regulation, like the interpretation of a statute, is, of course, a question of law . . . .' " (*Culligan Water Conditioning v. State Bd. of Equalization* (1976) 17 Cal.3d 86, 93 [30 Cal.Rptr. 321, 550 P.2d 593]; *Manriquez v. Gourley* (2003) 105 Cal.App.4th 1227, 1234–1235 [30 Cal.Rptr.2d 209] (*Manriquez*).) "In interpreting regulations, the court seeks to ascertain the intent of the agency issuing the regulation by giving effect to the usual meaning of the language used so as to effectuate the purpose of the law,

and by avoiding an interpretation which renders any language mere surplusage." (*Modern Paint & Body Supply, Inc. v. State Bd. of Equalization* (2001) 87 Cal.App.4th 703, 708 [104 Cal.Rptr.2d 784].)

A. *Title 17*

Title 17 distinguishes between the collection and handling of breath samples and their analysis. The procedures related to the former are found in article 5, Collection and Handling of Samples (§§ 1219, 1219.1–1219.3) while those for the latter are in article 7, Requirements for Breath Alcohol Analysis (§§ 1221, 1221.1–1221.5). The word "operator" is found only in article 7, indicating only tasks described in that article require operator certification.

As defined in article 7, an operator "shall be a forensic alcohol supervisor, forensic alcohol analyst, forensic alcohol analyst trainee or a person who has completed successfully the training described under section 1221.4[, subd.] (a)(3) and who may be called upon to operate a breath testing instrument in the performance of his duties." (§ 1221.4, subd. (a)(5).) Title 17 defines "Breath Alcohol Analysis" as the "analysis of a sample of a person's expired breath, using a breath testing instrument designed for this purpose, in order to determine the concentration of ethyl alcohol in the person's blood." (§ 1215.1, subd. (c).) Certain tasks in this analysis may be performed only by an operator, including the operation of breath testing instruments. (§ 1221.4, subd. (a)(5).) And only operators may perform the requisite, periodic accuracy check on these instruments. (§ 1221.4, subd. (a)(2)(A)(1).)

Operators must be trained in the use of breath test instruments. The training is described in section 1221.4, subdivision (a)(3): "Breath alcohol analysis shall be performed only with instruments for which the operators have received training, such training to include at minimum the following schedule of subjects: [¶] (A) Theory of operation; [¶] (B) Detailed procedure of operation; [¶] (C) Practical experience; [¶] (D) Precautionary checklist; [¶] (E) Written and/or practical examination." Subdivision (a)(4) of section 1221.4 mandates: "Training in the procedures of breath alcohol analysis shall be under the supervision of persons who qualify as forensic alcohol supervisors, forensic alcohol analysts or forensic alcohol analyst trainees in a licensed forensic alcohol laboratory." Training received from an authorized person results in operator certification.

Article 5 contains no operator requirement. Section 1219.3 details the steps in the collection of breath samples for forensic alcohol analysis, including the necessity of an observation period. Section 1219.3 provides: "A breath

sample shall be expired breath which is essentially alveolar[2] in composition. The quantity of the breath sample shall be established by direct volumetric measurement. *The breath sample shall be collected only after the subject has been under continuous observation for at least fifteen minutes prior to collection of the breath sample, during which time the subject must not have ingested alcoholic beverages or other fluids, regurgitated, vomited, eaten, or smoked.*" (Italics added.)

█ This language does not require an operator to conduct the observation. Insisting such a procedure is required, Hernandez points to section 1215.1, subdivision (i). That section defines the "Method" of forensic alcohol analysis as "the steps used by a *trained* person to make a measurement of alcohol concentration." (Italics added.) Hernandez argues the observation period is essential to title 17's prescribed "method" of breath alcohol analysis and therefore must be performed by one who has received training in the process, namely an operator. The observation period is indeed essential: section 1219.3 expressly mandates it.

But while operators must be trained in the use of breath test instruments (see § 1221.4, subd. (a)(3)), nothing in title 17 supports Hernandez's assumption that observers must be specially trained to recognize ingestion of fluids, regurgitation, vomiting, eating, or smoking. These are bodily functions and activities of common experience. Roberts was warned by language on the "Information & Precautionary Checklist" form to watch for each. (Cf. *State v. McVay* (1987) 83 Ore.App. 312 [731 P.2d 466, 467] [recognizing certified operator could delegate observation to uncertified jailer, but holding operator's query to jailer whether subject had "taken anything by mouth" was insufficient where regulations also precluded vomiting and regurgitation].) Roberts certified *none* of title 17's disqualifying events occurred.

Hernandez suggests no reason why training is necessary to perceive fluid ingestion, regurgitation, vomiting, eating, or smoking. He does not reveal what practices might comprise such specialized training. More importantly, the plain terms of title 17 do not require this training for operators. Training observers as operators would thus be an empty and useless gesture, offering no improvement in detection of the prohibited phenomena. In sum, we decline to engraft on title 17 an operator-observer requirement that is neither expressly in the regulatory language nor impliedly required by it. The

---

[2] As defined in the regulations, " 'Alveolar' refers to the smallest air sacs in the lungs and to that portion of the expired breath which is in equilibrium with respect to alcohol with the immediately adjacent pulmonary blood." (§ 1215.1, subd. (m).) Alveolar breath, sometimes called "deep lung air," is necessary to ensure accurate determination of blood alcohol concentration. (See *People v. French* (1978) 77 Cal.App.3d 511, 521 [143 Cal.Rptr. 782] ["A sample which is not entirely deep lung air is diluted by fresh air or mouth air and thus gives an erroneously low indication on the intoxilyzer"].)

jurisdictions that have considered the issue are uniformly in accord. (See *Bolivar v. Dick* (1996) 76 OhioSt.3d 216 [1996 Ohio 409, 667 N.E.2d 18, 20]; *State v. McVay, supra,* 731 P.2d at p. 466, fn. 1 [Oregon]; *Potier v. Dept. of Revenue, Motor Veh. D.* (Colo.Ct.App. 1987) 739 P.2d 915, 916; *People v. Torres* (1987) 160 Ill.App.3d 643 [513 N.E.2d 1142, 1145, 112 Ill.Dec. 533]; *Sparrow v. State* (1985) 284 Ark. 396 [683 S.W.2d 218, 219]; see generally Annot., Necessity and Sufficiency of Proof That Tests of Blood Alcohol Concentration Were Conducted in Conformance with Prescribed Methods (1979) 96 A.L.R.3d 745, § 9 ["Observation period"].) Hernandez's argument the observation period must be conducted by a certified breath test instrument operator is without merit.

B. *Official Duty Presumption and Substantial Evidence*

Citing *Shea v. Department of Motor Vehicles* (1998) 62 Cal.App.4th 1057 [72 Cal.Rptr.2d 896] (*Shea*), Hernandez persuaded the trial court he rebutted the official duty presumption. He maintains on appeal Roberts's lack of operator training negated the presumption the breath test results were obtained in compliance with title 17. *Shea* is inapposite.

In *Shea,* we considered the admissibility of blood-alcohol tests performed by unsupervised forensic alcohol analyst trainees. DMV sought to introduce the test results pursuant to the public employee records hearsay exception (Evid. Code, § 1280), but we agreed with defendant the results were not obtained in the course of the trainees' official duties. We recognized under title 17 that trainees "may perform forensic analysis" but "*only* under the supervision of a forensic alcohol supervisor or forensic alcohol analyst." (§ 1216, subd. (a)(1)(A), italics added.) We concluded: "Because a trainee is not allowed to perform forensic analysis except when supervised, a trainee cannot be acting 'by and within the scope of duty of a public employee' when he or she is not being supervised." (*Shea, supra,* 62 Cal.App.4th at p. 1059.) Hernandez argues Roberts, like the *Shea* trainees, was acting outside the scope of duties assigned by title 17.

But as we have discussed, title 17 does not assign the duty of observation to operators and nothing in title 17 precluded Roberts from conducting the observation period. Moreover, Roberts was no mere trainee. As a peace officer, Roberts operated under an official duty to "observe the facts and report them correctly." (*Gananian v. Zolin* (1995) 33 Cal.App.4th 634, 641 [39 Cal.Rptr.2d 384].) Roberts conducted the observation period pursuant to his official duty to interdict and investigate public offenses, in this case driving with a blood-alcohol concentration greater than .08 percent. (Veh. Code, § 13353.2.) Roberts reported his 21-minute observation period pursuant to that duty, unlike the *Shea* trainees who were acting outside their authority.

For these reasons, Hernandez's attack under *Shea* fails to rebut the presumption the breath test results were obtained in compliance with title 17. The results were therefore admissible evidence. Thus, substantial evidence supports DMV's decision to suspend Hernandez's license, and the trial court's decision to the contrary must be reversed. (See *Smith v. Santa Rosa Police Dept.* (2002) 97 Cal.App.4th 546, 554 [119 Cal.Rptr.2d 72] [agency determinations supported by substantial evidence must be affirmed].)[3]

## C. *Continuous Observation**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## III

## DISPOSITION

The judgment of the trial court granting Hernandez's petition for writ of mandate to reinstate his driver's license is reversed. The matter is remanded with directions for the trial court to enter a new and different judgment denying the petition for writ of mandate. DMV is entitled to its costs for this appeal. (Cal. Rules of Court, rule 27.)

O'Leary, Acting P. J., and Ikola, J., concurred. ·

On January 9, 2004, the opinion was modified to read as printed above.

---

[3] After we filed this opinion on December 10, 2003, counsel for respondent moved to dismiss the appeal as moot because Hernandez died on September 1, 2003, prior to oral argument on October 22, 2003. Counsel suggests Hernandez's death renders moot any remedy affecting his driving privileges. Even so, "[a]ppellate courts have discretion to decide a case which, although moot, poses an issue of *broad public interest* that is *likely* to recur." (Eisenberg, et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2002) ¶ 5:32, p. 5-9; see *Edelstein v. City and County of San Francisco* (2002) 29 Cal.4th 164, 172 [126 Cal.Rptr.2d 727, 56 P.3d 1029]; *Konig v. Fair Employment & Housing Com.* (2002) 28 Cal.4th 743, 745-746, fn. 3 [123 Cal.Rptr.2d 1, 50 P.3d 718]; *Torres v. Parkhouse Tire Service* (2001) 26 Cal.4th 995, 1001 [111 Cal.Rptr.2d 564, 30 P.3d 57]; *NBC Subsidiary (KNBC-TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178, 1190, fn. 6 [86 Cal.Rptr.2d 778, 980 P.2d 337]; *County of Fresno v. Shelton* (1998) 66 Cal.App.4th 996, 1006-1008 [78 Cal.Rptr.2d 272].) The public interest in lawful enforcement of the drunk driving laws—specifically in the accurate determination of whether title 17 requires an observing officer to be an operator—is both broad and likely to recur, as amply shown by recurrence of the identical issue in a recent unpublished opinion from this court. We are satisfied the criteria for exception to the mootness doctrine apply in this case, and therefore we decline counsel's invitation to vacate the opinion and dismiss the appeal.

*See footnote, *ante*, page 168.