Argued and submitted September 30, 2019, reversed and remanded
July 21, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ROBERT MARTIN LEINWEBER,
*Defendant-Appellant.*

Umatilla County Circuit Court
CR150847; A166148

494 P3d 973

In this criminal appeal, defendant assigns error to the trial court's order denying his motion to suppress his breath alcohol test report, arguing that the officer failed to comply with OAR 257-030-0130. Among the requirements of that rule is that the operator of the breath test "is certain" and "remains certain" that the test subject does not regurgitate before providing a breath sample. Defendant argues that the officer was not certain that defendant had not regurgitated during the test. The officer testified that he relied on the breath test instrument to report, after the fact, whether defendant had regurgitated when he burped during a breath test sequence. *Held*: The Court of Appeals concluded that the totality of the evidence demonstrated that the precautions established in OAR 257-030-0130 were not satisfied because the officer did not develop the requisite certainty before administering the breath test, thus the trial court erred in denying defendant's motion to suppress.

Reversed and remanded.

Eva J. Temple, Judge.

Mark Kimbrell, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Joanna L. Jenkins, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

ARMSTRONG, P. J.

Reversed and remanded.

**ARMSTRONG, P. J.**

In this criminal appeal, defendant assigns error to the trial court's order denying his motion to suppress his breath alcohol test report, arguing that the officer failed to comply with OAR 257-030-0130. Among the requirements of the rule is that the operator of the breath test "is certain" and "remains certain" that the test subject does not regurgitate before providing a breath sample. We agree that the officer failed to form the certainty that OAR 257-030-0130 requires and, accordingly, reverse and remand.[1]

On August 15, 2015, defendant was arrested for driving under the influence of intoxicants (DUII) and reckless driving. The arresting officer took defendant to the police station where he agreed to submit to a breath test. Defendant provided two breath samples that showed an alcohol level of .155 and .150 percent, respectively, in violation of ORS 813.010(1)(a).

At the administrative hearing concerning defendant's license suspension, defendant argued that the officer administering the breath test failed to comply with OAR 257-030-0130. That rule provides the methods for operating the Intoxilyzer 8000, the instrument used for breath alcohol testing, and requires that, when administering the test,

"[t]he operator *is certain* that the subject has not taken anything by mouth (drinking, smoking, eating, taking medication, etc.), vomited, or regurgitated liquid from the stomach into mouth, *for at least fifteen minutes before taking the test.*"

OAR 257-030-0130(2)(a) (emphases added). After the operator obtains the first breath sample, the rule requires that the operator

"*continue to observe the subject and remain certain* that the subject does not take anything by mouth (drink, smoke, eat, take medication(s), etc.), vomit, or regurgitate liquid from the stomach into mouth *until the second breath sample request period is completed.*"

OAR 257-030-0130(3)(f) (emphases added). Defendant argued that the officer had failed to be "certain" that defendant

---

[1] We need not reach defendant's assignments of error concerning fines and costs imposed in the judgment.

had not regurgitated liquid when, during the breath test sequence, defendant belched.

The arresting officer testified at defendant's administrative hearing that, using the Intoxilyzer, he had initiated three separate testing sequences before he obtained a valid breath sample from defendant. He explained that the Intoxilyzer requires two breath samples for comparison to analyze for any possible contaminant or other interference in the sample. The two reported samples must show alcohol concentration levels that are within 10% of each other, or the instrument will not record a valid sample.

A complete test sequence using the Intoxilyzer consists of a 15-minute observation period, after which time, the operator may administer the test. Once the subject blows into the instrument, the subject has approximately three minutes to blow into the instrument a second time. If the second sample is not obtained within that window, the machine will "time out" and automatically indicate that the subject has "refused" the test.

Here, the officer checked defendant's mouth for foreign materials and told defendant to tell him if he burped or vomited at any point. The officer started the required 15-minute observation period, but just as that period was coming to an end, and before defendant blew into the Intoxilyzer, defendant belched. Hearing the belch, the officer started a second, new test sequence. After 15 minutes had expired, defendant blew into the Intoxilyzer, but while doing so, started coughing and making "dry heaving" noises. Accordingly, the officer stopped the test, and the Intoxilyzer automatically reported that attempted test sequence as a "refusal."

The officer began a third testing sequence. When 15 minutes had passed, defendant blew into the instrument. While the Intoxilyzer processed the sample, defendant started coughing, and the officer asked defendant whether he had vomited during that cough.[2] Then, before defendant blew into the Intoxilyzer for the second sample, he audibly

---

[2] Defendant's response to that question was noted on the transcript as "indiscernible," and no one at defendant's suppression hearing offered clarification.

belched. The officer heard the belch but continued administering the test. Defendant blew into the Intoxilyzer, completing the test sequence, after which the Intoxilyzer reported the alcohol content in defendant's breath samples, noted above.

The officer testified that, based on his training, he was aware that when a test subject burps, there is a risk of regurgitation; that is, liquid in the stomach coming up into the mouth. He recalled that when defendant burped during the first attempted test sequence, he had stopped the test, and that when defendant burped during the third testing sequence, he had "continued on with the test." The officer explained that he "went ahead" with the third test because defendant had not belched until *after* he had already provided a valid breath sample. Thus, the officer "knew that if there was mouth alcohol present [from the belch,] there would be a large variation between [the first and second] breaths," and that any mouth alcohol "would be evident with [the] test." The officer explained that such was not the case with the first attempted test, where defendant had belched *before* providing any breath sample. The officer explained that, having obtained a valid sample during the third test sequence, he "relied upon [the Intoxilyzer] read-out" to indicate whether there was "any liquid in the burp."

When questioned whether the officer felt "certain that [defendant] did not vomit, regurgitate, or put anything in his mouth," the officer answered, "Yes. He did burp following [the first] breath." The officer further testified that it was a "fair assessment" to say that he was somewhat less than certain whether defendant's belch had resulted in regurgitation of alcohol.

After the administrative hearing had concluded, the state charged defendant with one count of DUII, ORS 813.010, and one count of reckless driving, ORS 811.140.

Defendant moved to suppress evidence of the breath test, claiming that it was invalidly obtained and thus inadmissible against him. He offered the transcript of the officer's testimony from the earlier administrative hearing to support his assertions that the officer had failed to comply

with the requirement in OAR 257-030-0130, to be "certain" that defendant had not regurgitated during the test.

At the suppression hearing, the officer testified to the facts summarized above, adding that it was his belief at the time that defendant was trying to "game the system." The state also called as a witness an "Intoxilyzer expert" from the Oregon State Police Crime Lab who testified that the Intoxilyzer would have detected whether the burp had caused defendant to regurgitate and thereby contaminate the sample. The expert said that the court had nothing to be "concerned about" with the administration of the breath test, because, "what matters" is that the Intoxilyzer "did get two samples, one for the first blow, one for the second blow, that corresponded within plus or minus 10 percent of the average of the two," and that such was "good enough."

In its closing argument, the state maintained that the proper focus of the rule is on "the officer's behavior," and what he "did or did not do." Relying on *State v. Balderson*, 138 Or App 531, 539, 910 P2d 1138 (1996), *rev dismissed as improvidently allowed*, 327 Or 555 (1998), the state argued that, to comply with the rule, "absolute certainty is not required," but rather, certainty that is "reasonable under the circumstances." Defendant contended that the rule does not permit the officer to rely on the Intoxilyzer to determine— after the fact—whether defendant had regurgitated alcohol when he belched, but that the officer must be certain at the time of the test that regurgitation does not occur.

At the end of the suppression hearing, the trial court asked defendant whether he was making "one of those arguments where the law must be followed because *** it hasn't caught up with the science?" Defendant responded that the Oregon Administrative Rules "have set out a specific set of guidelines that must be satisfied," because not every investigation includes the "benefit of a scientist."

The trial court denied defendant's suppression motion. The court based its ruling on the expert's testimony that the Intoxilyzer would have detected any interfering liquid alcohol in the sample if there had been any. The court did not discuss whether the officer had formed the certainty that OAR 257-030-0130 requires.

After the trial court denied his motion, defendant entered a conditional guilty plea to the charge of DUII. Defendant appeals, assigning as error the trial court's denial of his suppression motion. Defendant and the state reprise their arguments made below.

We review the denial of defendant's motion to suppress for legal error. *State v. Heise-Fay*, 274 Or App 196, 201, 360 P3d 615 (2015). We are bound by the trial court's express and implicit factual findings, so long as evidence in the record supports them. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). In the absence of specific factual findings, this court presumes that the trial court made factual findings consistent with its legal conclusions. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). ORS 813.160(1) establishes the requirements for a breath test to be valid evidence under ORS 813.300 in a prosecution for DUII. Failure to follow the methods for operating the Intoxilyzer adopted in OAR 257-030-0130, as set forth above, necessitates suppression of the test result.

Whether the officer administering the breath test has complied with OAR 257-030-0130 requires inquiry into whether the officer "followed the precautions required by the rule." *Balderson*, 138 Or App at 536. Accordingly, our primary focus is not on defendant and whether he in fact regurgitated, but rather "on the *conduct of the officer*." *Id.* (emphasis in original). The rule requires that the operator of the test form a subjective belief to the degree of "certainty" that the test subject has not engaged in any of the acts described by the rule, and that belief must be reasonable under the circumstances. *State v. Tynon*, 152 Or App 693, 696, 955 P2d 250 (1998).

Here, the officer testified that he was aware of a risk of regurgitation from belching—and thus, a risk of contamination in a breath sample when a subject belches. That testimony was in accord with the action he took to cancel the test when defendant belched the first time. As a reminder, the Intoxilyzer function requires two breath samples for analysis, and the instrument will report any variance between the two, thus identifying contamination. Relying on that function, the officer explained that, when defendant

belched during the first attempted test, he stopped the test, because he had not yet obtained a "clean" breath sample for the Intoxilyzer to compare and analyze for regurgitation.

During the third, final test sequence, defendant belched during the short period between breath samples. Notwithstanding the belch, the officer testified that he proceeded with the test because he was aware that the Intoxilyzer would verify—after the test was completed—whether defendant had regurgitated during that belch. The evidence is that the officer was not certain whether defendant's first belch caused regurgitation, demonstrated by the cancellation of the test, and that his decision to proceed after the second belch was, at least in part, due to his knowledge that the Intoxilyzer would detect whether regurgitation had, in fact, occurred.

The trial court relied on the "technical functions of the Intoxilyzer" to reach its conclusion that the "two samples were valid and were not contaminated by liquid alcohol." The trial court focused on whether defendant had, *in fact*, regurgitated, as evidenced by the Intoxilyzer report, rather on the officer's conduct, and consequently, his compliance with OAR 257-030-0130.

We conclude that relying on the Intoxilyzer to confirm, after the fact, whether defendant had regurgitated does not satisfy the precautions that OAR 257-030-0130 has established. That rule requires that the operator "*is* certain" that the subject has not regurgitated, and "*remain*[*s*] certain *** until the second breath sample request period is completed." (Emphases added.) The present-tense text of the rule evinces a requirement that the operator's certainty occurs contemporaneously with the administration of the breath test, with that certainty remaining "*until* the period is completed." (Emphasis added.) The rule does not authorize the operator to develop certainty *after* the period is completed, which, by the officer's testimony, occurred here when he relied on the Intoxilyzer to confirm whether defendant regurgitated when he belched.

The court noted that perhaps the law has not yet caught up with the scientific capabilities of the Intoxilyzer. Nevertheless, until and unless the rule changes, the operator

must follow the precautions established in the rule. We agree with the state's contention that the rule does not require the operator to place a scope "down the subject's throat." As for what more the officer could have done, the state provides one possible answer, which is that, rather than rely on the Intoxilyzer to detect regurgitation, the officer could have relied "on his own observations and perceptions." Further, the officer could have cancelled the third test sequence and allowed the Intoxilyzer to report that defendant had refused the test, just as he did the first time defendant belched. That might have been one appropriate solution where an officer believes that defendant was trying to "game the system."

In a similar case, *Balderson*, we affirmed the trial court's determination that the "make certain" requirement in the predecessor rule was satisfied. In that case, the defendant claimed that she had silently regurgitated, unbeknownst to the officer. We emphasized the trial court's ruling that the officer had used "all human faculties" to "make certain" that the defendant had not regurgitated, when he checked her mouth and watched her, during which time, she had made no "perceptible" or "outward" sign of regurgitating. *Id.* at 534, 539. Here, defendant perceptibly belched. But, the officer—who demonstrated his awareness of the risk of regurgitation in a belch when he stopped the test the first time—went ahead in reliance on the Intoxilyzer, rather than his own "human faculties" to form the requisite certainty in the moment.

Moreover, in *State v. Barletta*, 188 Or App 113, 116, 71 P3d 166 (2003), we reversed the trial court's determination that the rule was satisfied, where the officer had left the defendant alone in the restroom and supplied no testimony about whether "he could have heard her vomit," or about "the thickness of the door, the noise in the room where he waited for her, or other things that would be relevant." In this case, the officer's testimony about his certainty that defendant did not regurgitate was, at best, conflicting. When the officer testified that he had been certain, he later qualified that statement. Elsewhere, he said that he depended on the Intoxilyzer report to indicate whether defendant had regurgitated.

In this case, the totality of the evidence demonstrates that the officer did not form the subjective certainty that OAR 257-030-0130 requires, and, therefore, he did not comply with the rule. It follows that the trial court erred in denying defendant's motion to suppress.

Reversed and remanded.